# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-1771

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

VIRGIL SMITH,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:03-CR-6—**Theresa L. Springmann**, *Judge.*

_____

ARGUED OCTOBER 28, 2004—DECIDED JULY 18, 2005

_____

Before RIPPLE, WOOD, and EVANS, *Circuit Judges.*

WOOD, *Circuit Judge.* On December 9, 2002, Virgil Smith
and a number of his associates decided to rob a bank.
Before too long, he was caught, indicted, and convicted by
a jury on one count of aiding and abetting an armed bank
robbery, in violation of 18 U.S.C. § 2113(a) and (d) and 18
U.S.C. § 2, and one count of aiding and abetting in the use
of a firearm, during and in relation to the bank robbery, in
violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. In this
appeal, he challenges both the conviction and the 221-
month sentence he received. We affirm the conviction, but

we order a limited remand of Smith's sentence in accordance with *United States v. Paladino*, 401 F.3d 471, 483-84 (7th Cir. 2005).

## I

On the fateful day, Smith, along with Rashien Chiles, Melvin Woods, Jernard Freeman, and DeMarcus White, decided to rob the Bank One on Lima Road in Fort Wayne, Indiana. According to Smith's accomplices, Smith outlined exactly how the group should conduct the robbery. He also provided a Desert Eagle handgun and a stolen vehicle to use to drive to the bank. The group met at a prearranged location near the bank just before the robbery. Smith provided masks for Woods and White. When the group arrived at the bank, Smith and Freeman waited outside, while the other three entered the bank, equipped with a .45 caliber handgun, to steal the money. Freeman's job was to serve as getaway driver for the actual robbers; Smith's was to distract and obstruct the police from reaching the getaway car.

The heist did not go as planned, in large ways and small. Chiles wound up in Smith's car with him; those two initially eluded capture. The police quickly apprehended Freeman, Woods, and White. During a search of their getaway car, the officers found a Desert Eagle handgun in the trunk; the .45 caliber handgun used during the robbery never turned up. Ultimately, Freeman, Woods, and White pointed a finger at Smith, claiming that he had recruited them, formulated the robbery plan, provided the stolen blue car, the masks, and both of the guns—the .45 used during the robbery and the Desert Eagle that was in the trunk of the car.

## II

Smith presents four arguments for our consideration: (1) the district court violated his right to a speedy trial as

guaranteed in the Speedy Trial Act, 18 U.S.C. § 3161; (2) the court erred when it refused to allow him to change his plea of not guilty on count one and instead to plead guilty to the lesser included offense of unarmed bank robbery; (3) the court abused its discretion in admitting a Desert Eagle handgun into evidence; and (4) the court improperly instructed the jury that "[e]scape is part and parcel of bank robbery." We find no reversible error on any of these points.

## A

Logically, the first question is whether Smith's rights under the Speedy Trial Act were violated and if so, whether any such error affected Smith's substantial rights. If so, then the indictment would have to be dismissed and the government would have to start over again, if it can. See 18 U.S.C. § 3162(a)(2). We review a district court's interpretation of the Speedy Trial Act *de novo* and its factual findings for clear error. *United States v. Saleno*, 108 F.3d 730, 734 (7th Cir. 1997). The Speedy Trial Act requires that a defendant be brought to trial within 70 days from the date the indictment is filed or the date when the defendant appears before a judicial officer where the charge is pending, whichever is later. 18 U.S.C. § 3161(c)(1); see also *United States v. Henderson*, 476 U.S. 321, 322 (1986). The statute excludes various delays from the calculation of the 70- day period, including any delays that result from filing pretrial motions, § 3161(h)(1)(F), and time, not to exceed 30 days, when a proceeding concerning the defendant is "actually under advisement by the court," § 3161(h )(1)(J).

This case implicates the latter of these exclusions: when a proceeding concerning Smith was under advisement. After some time had elapsed that counted against the clock, Smith filed a motion to plead guilty to unarmed bank robbery on July 22, 2003. At that point, the district court set a briefing schedule on the motion, under which the

government was required to respond to Smith's motion by August 22, Smith had until September 8 to reply, and the government had until September 19 to file a sur-reply. Smith missed his deadline by one day, filing his reply on September 9; the government filed its sur-reply brief a week late, on September 26. The district court denied the motion on November 17. Four days later, on November 21, Smith moved to dismiss the indictment for speedy trial violations and to continue the trial. The court denied that motion on December 10, and the trial began on December 16.

Our first question is whether the court erred in finding that the statutory speedy trial standards were not violated here. As we have reconstructed it, the periods were as follows (all dates are in 2003):

Feb. 26:  Indictment: clock starts

Feb. 28:  Arraignment; pretrial motions due Mar. 31

April 1:  Clock resumes (1 day)

April 8:  Smith motion to extend discovery (+7 days)

June 9:  New deadline for motions; clock resumes

July 22:  Smith motion to plead guilty (+42 days)

Sept. 9:  Smith reply, 1 day late

Sept. 18:  Government sur-reply due; not filed

Sept 26:  Government sur-reply filed

Nov. 17:  Court denies Smith's motion; government files pretrial motion *in limine*, stopping clock

Nov. 21:  Smith files motion to dismiss on Speedy Trial ground

Up until July 22, when 50 countable days had elapsed, the parties basically agree on the proper way to count the time. They part company over the question whether the clock started running on the day after the government's sur-

reply brief was due, or if it started running again on the day after the brief was actually filed. After the briefing was complete on Smith's motion, the statute gave the court 30 non-countable days in which to issue its decision. 18 U.S.C. § 3161(h)(1)(J). Under Smith's view, that date was October 18 (30 days after the government's brief was due), and the clock started running again on October 19. Under the government's view, that date was October 26, and the clock started running again on October 27. Once the clock resumed, only 20 days remained. According to Smith, that period expired on November 8. According to the government, that period expired on November 17 (because November 15, which would otherwise have been the date, fell on a Saturday in 2003), which was the date when the court ruled on the motion. The remainder of the time between November 17 and the start of the trial was properly excluded because the motion *in limine* was under advisement.

If Smith is correct, and the 30-day period for the court's consideration of the motion began the day after the government's sur-reply brief was due, then he is also correct that time ran out for his trial. If the government is correct that the actual date of its filing is the critical one, then it avoided a speedy trial violation by the skin of its teeth. The question of the proper date of reference is one that this court has already considered in *United States v. Thomas*, 788 F.2d 1250 (7th Cir. 1986). In that case, we held, on more extreme facts than we face here (because delays caused by the defendant were partly responsible for the prosecutor's late filing) that the period of advisement begins "as soon as the prosecutor's response is due, no matter when the prosecutor filed." *Id.* at 1259; see also *United States v. Baskin-Bey*, 45 F.3d 200, 203 (7th Cir. 1995) ("[T]ime the judge gives for the government's response is automatically excludable up to the scheduled date of the response."). Smith is therefore correct that the speedy trial clock ran out well before the court ruled on his motion.

Smith faces one more hurdle, however, before he can obtain relief on this ground. Even though district courts have an unconditional obligation to enforce the Speedy Trial Act, if the district court errs and the case proceeds to judgment, then the harmless error rule applies at the appellate level. See *United States v. Zedner*, 401 F.3d 36, 47 (2d Cir. 2005); see generally *Neder v. United States*, 527 U.S. 1 (1999); 28 U.S.C. § 2111 ("On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."). As the Second Circuit explained in *Zedner*, "[t]here are excellent reasons to distinguish between errors under the Speedy Trial Act that are harmless and those that are harmful." 401 F.3d at 47. The Speedy Trial Act serves an important purpose, and we have no doubt that a violation could prejudice a defendant in certain circumstances. Nevertheless, Smith has pointed to no prejudicial event that occurred aside from the passage of six extra days, or a little more than an extra month, depending on one's perspective. He was able to present evidence and defend the government's accusations at his trial without any discernible problems caused by this minor delay. We find that the Speedy Trial Act violation did not affect Smith's substantial rights.

**B**

We now turn to Smith's claim that the court should have allowed him to change his plea from "not guilty" on count one to "guilty" on the lesser included offense of unarmed bank robbery. In its order denying Smith's motion to this effect, the court reasoned that FED. R. CRIM. P. 10(a)(3), which governs arraignments, requires the defendant "to plead *to the* indictment or information." (alteration in original). The court concluded that "[t]he rule explicitly states

that a defendant must plead *to the charge* in the indictment or information. He does not have the option of pleading to a lesser included offense." (alteration in original). In addition, the court observed that FED. R. CRIM. P. 11, which governs pleas, allows for only "three types of pleas—not guilty, guilty, or (with the court's consent) nolo contendre— all of which must be in response to the actual charges brought by the government." Smith believes that had he been allowed to change his plea to guilty for unarmed bank robbery and then to proceed to trial on the charge for armed bank robbery, he would have received a two-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 to his guideline calculation.

We put to one side Smith's optimistic assumption about his chances for an acceptance of responsibility adjustment under those circumstances and focus on his argument about the plea. "A defendant has no absolute right to have a court accept his guilty plea, and a court 'may reject a plea in [the] exercise of sound judicial discretion.'" *United States v. Kelly*, 312 F.3d 328, 330 (7th Cir. 2002) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). "Nevertheless, a court cannot act arbitrarily in rejecting a plea . . . and must articulate on the record a 'sound reason' for the rejection." *Id.* (internal citations omitted).

The government opposed Smith's motion in the district court "because it d[id] not wish to be barred from proceeding against the defendant on the greater included offense of [armed bank robbery]." It feared that *Brown v. Ohio*, 432 U.S. 161 (1977), which held that "[w]hatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense," *id.* at 169, would bar it from proceeding on the greater charge here once Smith pleaded to the lesser charge. On appeal, the government continues to assert that if the charge for armed robbery had been dismissed without prejudice (say for a violation of the Speedy Trial Act) it

would be barred from proceeding in a second prosecution if Smith had already pleaded guilty to the lesser included offense. Smith (in an odd role reversal) argues that no such problem would arise. He relies on *Ohio v. Johnson*, 467 U.S. 493 (1984), which held that when a defendant pleads guilty over the government's objection to the lesser included offense, the defendant is considered voluntarily to have severed the charges and is not at that point free to use double jeopardy "as a sword to prevent the State from completing its prosecution," *id.* at 502.

Interesting as this double jeopardy debate is, we have no need to resolve it here. The district court was well within its discretion to insist that Smith enter a plea to the charges he was facing, not to a lesser included offense. This is so even if after a full trial Smith might have been entitled to request a jury instruction on lesser included offenses, depending on the evidence that was offered. See FED. R. CRIM. P. 31(c); *Keeble v. United States*, 412 U.S. 205, 208 (1973). Furthermore, Smith's assumption that splitting the baby in the way he proposed would have entitled him to an acceptance of responsibility adjustment borders on the frivolous. The commentary to § 3E1.1 of the Guidelines explains that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilty, is convicted, and only then admits guilt and expresses remorse." Cmt. 2. We therefore reject his challenge to the court's decision on his motion to plead guilty to the lesser offense.

## C

Smith's next argument relates to the admission of evidence at the trial—in particular to the district court's decision to admit the Desert Eagle handgun into evidence. That was the gun that was found in the trunk of one of the

getaway cars. Smith correctly points out that the Desert Eagle was not the gun that was used inside the bank. He argues that it was therefore not used, possessed, or carried during the commission of the crime. Going further, he also asserts that it "was not available for use during the getaway" because it was located at all times in the trunk of one of the getaway cars and thus was not immediately accessible. Taken together, he argues, these facts show that the Desert Eagle had no relevance to the crime and thus inadmissible, FED. R. EVID. 402, or at least that whatever relevance it may have had was far outweighed by its prejudicial impact, FED. R. EVID. 403. We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Thompson*, 359 F.3d 470, 475 (7th Cir. 2004).

According to John Phinney, one of the ATF agents who testified at trial, Smith admitted that he provided the Desert Eagle for the bank robbery and instructed his co-defendants on how to use it. Even though the gun was located in the trunk of one of the getaway cars, its presence was part of their plan for escape, and with a simple stop of the car it could have been used to ward off the police. *United States v. Wilkins*, 659 F.2d 769, 773 (7th Cir. 1981) (stating that "[t]he getaway is part of the robbery . . ."). See also *United States v. Williams*, 344 F.3d 365, 375-76 (3d Cir. 2003), *cert. denied* 124 S. Ct. 1184 (2004) (defendant violated § 924(c) when the gun was not brought into the bank but was left in the getaway car).

In this case, Smith carried the Desert Eagle in the course of his preparations for the robbery. It was therefore relevant to the crime of aiding and abetting in armed robbery for which Smith was convicted, as well as his § 924(c) charge. Whether, as Rule 403 inquires, its probative value outweighed any prejudice that its admission might cause was a question for the district judge in the first instance. We see no abuse of discretion in the decision to admit the gun.

### D

Smith's last challenge to his conviction relates to one of the court's instructions to the jury. In his view, instruction number 29 misled the jury by oversimplifying the elements required for the jury to convict him of armed bank robbery. The court told the jury that: "Escape is part and parcel of a bank robbery." Smith suggests that the jury may have erroneously inferred from this statement the notion that escape was the only element needed to convict him of bank robbery.

We review a district court's instructions to the jury for an abuse of discretion, *United States v. Messino*, 382 F.3d 704, 711 (7th Cir. 2004) (citation and internal quotation marks omitted), unless the instructions are based on an error of law in which case our review is *de novo*, *United States v. Smith*, 308 F.3d 726, 740 (7th Cir. 2002). "To win a new trial based on an erroneous jury instruction," Smith "must show both that the instructions did not adequately state the law and that the error was prejudicial to [him] because the jury was likely to be confused or misled." *Boyd v. Illinois State Police*, 384 F.3d 888, 894 (7th Cir. 2004). To determine whether Smith suffered prejudice, we "consider[ ] the instructions as a whole, along with all of the evidence and arguments," to see whether "the jury was misinformed about the applicable law." *Id.* In our review, we assume that juries follow the instructions they were given. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Perhaps the most important point to make in response to this argument is the well-worn one that jury instructions must be evaluated as a whole. If the district court had limited its instructions to the one sentence Smith highlights, we might have had a problem. But, not surprisingly, it did no such thing. Instead, immediately before the instruction Smith criticizes, the court gave two instructions laying out the elements required for the offense of aiding

and abetting an armed bank robbery, in violation of 18 U.S.C. § 2113(d) and the offense of unarmed bank robbery, in violation of 18 U.S.C. § 2113(a). We presume that juries follow their instructions, and thus we are confident that the jury's instructions were not objectionable.

There was also no problem in the court's decision to inform the jury that the escape phase of the robbery was relevant to its deliberations. We have previously upheld the convictions of defendants whose only participation in a bank robbery was to assist in the getaway. See, *e.g.*, *United States v. Rawlings*, 341 F.3d 657, 659 (stating that the driver of the getaway car "was a full-fledged member of the conspiracy [to commit bank robbery]"); *Wilkins*, 659 F.2d at 773 (stating that "[t]he getaway is part of the robbery; therefore, the driver of the getaway car is a principal in the crime of robbery and not a mere accomplice after the fact."); see also *United States v. Donaby*, 349 F.3d 1046, 1054 (7th Cir. 2003) (commenting favorably on other courts' decisions that found the "factual and temporal interconnectedness of bank robbery and flight" in a case affirming a district court's order of restitution for damage to a police car that was damaged during the defendant's escape). Other circuits have explicitly found that the escape phase of a bank robbery is a continuation of the crime. See, *e.g.*, *Williams*, 344 F.3d at 372 ("Our case law has consistently treated escape as part and parcel of a bank robbery."); *United States v. Taylor*, 322 F.3d 1209, 1212 (9th Cir. 2003) ("We have held [ ]that the escape phase of a crime is still part of the commission of the crime.").

This does not mean that proof of getaway efforts is a distinct element of the crime of bank robbery. Many bank robbers are caught red-handed and never have the chance to escape, and they are rightly convicted of violating the law. It merely means that as a matter of fact, other robberies do have an escape phase, and defendants are ac-

countable for actions they take at that point. The Third Circuit put it well in the opinion on which the district court was relying:

> [A] bank robbery does not necessarily begin or end at the front doors of the bank. The escape phase of a bank robbery is not an event occurring after the bank robbery. Rather, the escape phase of a bank robbery is part of the robbery. The escape phase of a bank robbery extends at least to the immediate pursuit of a defendant following his or her physical departure from the bank.

*Williams*, 344 F.3d. at 376 n.5. Perhaps an instruction that had captured more of the detail of this passage would have been better. Nevertheless, even without a more complete explanation of how escape relates to the crime of bank robbery, Smith was not prejudiced by the court's instruction that "[e]scape is part and parcel of a bank robbery." Escape can be such a part, and the instructions taken as a whole correctly told the jury what it had to find to convict.

## III

Last, we address the question of Smith's sentence. The sentencing proceedings here took place before the Supreme Court handed down its decision in *United States v. Booker*, 125 S. Ct. 738 (2005). The district court calculated Smith's Guidelines offense level at a Level 26 with a Criminal History Category V. This yielded a sentencing range between 110 and 137 months. The district court sentenced Smith at the top of the range to 137 months' imprisonment on count one and a mandatory consecutive term of 84 months' imprisonment for his conviction on count two, which is the statutory minimum for his § 924(c) violation, for a total of 221 months. Although the court had no discretion over the 84-month component of the sentence, the 137-month part was calculated on the assumption that the

Guidelines were mandatory. Smith did not preserve any objection to this procedure at trial, and thus our review is for plain error only. We therefore are ordering a LIMITED REMAND to the district court under the procedures detailed in *Paladino*, so that it can let us know whether it is inclined to change the 137-month part of the sentence now that the Sentencing Guidelines are advisory. We retain jurisdiction over the appeal pending this inquiry. In all other respects, we AFFIRM Smith's conviction.

A true Copy:

      Teste:

 

_____
***Clerk of the United States Court of
Appeals for the Seventh Circuit***