In the

# United States Court of Appeals
### For the Seventh Circuit

No. 05-1974

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TODD ANDREWS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:01-CR-93—**Theresa L. Springmann**, *Judge.*

ARGUED FEBRUARY 22, 2006—DECIDED MARCH 30, 2006

Before FLAUM, *Chief Judge*, and WILLIAMS and SYKES, *Circuit Judges.*

FLAUM, *Chief Judge.* A jury found Todd Andrews guilty of bank robbery, 18 U.S.C. § 2113(a) and (d), and the use of a firearm during a crime of violence, 18 U.S.C. § 924(c). During his trial, the district court denied Andrews' motion to suppress evidence seized from his home without a search warrant. After the close of evidence, Andrews moved for a judgment of acquittal on the firearms charge. The district court denied Andrews' motion.

Andrews now appeals the district court's decision to allow the government to introduce evidence seized at his home. He also appeals his conviction for the use of a firearm during a crime of violence.

For the following reasons we affirm the judgment of the district court.

## I.  Background

On the morning of November 28, 2001, two men entered the Midwest America Federal Credit Union, West Jefferson Street Branch, a federally insured credit union. The two men carried guns and waved them at the employees. One man stayed in the lobby area with the tellers, while another demanded that the credit union manager, Susan Bolden, remove money from the vault. In all, the suspects took over $100,000.00 in cash. Immediately after the men left the bank, Bolden called the police.

Members of the Federal Bank Robbery Task Force arrived within a few minutes of the call. While being interviewed by Detective Michael Vaughn, Bolden overheard a police radio call stating that individuals matching the suspects' description had been seen moving bags and clothing from a red Cadillac to a white car. This prompted Bolden to tell Vaugh about a red or maroon Cadillac she remembered. She recalled that two black males would sometimes cruise around the credit union parking lot early in the morning before making transactions. Credit union employees recorded their names. One of the named individuals was incarcerated, and the other was Todd Andrews. Further investigation revealed Todd Andrews was the registered owner of a maroon Cadillac.

Bolden also stated that a previous manager, Faye Thompson, had taken note of the red Cadillac. Bolden called Thompson. Thompson recalled that in June 2001, two individuals came into the credit union. One man went to a teller and the other appeared to be counting the number of surveillance cameras. Although both men were members of the credit union, Thompson was concerned enough that she wrote down the portion of the license plate she could

observe, "2305," and a description of the red Cadillac. The piece of paper on which Thompson wrote this information was produced at trial. During the trial, Thompson identified a picture of the automobile she had seen in June 2001. The automobile identified was Andrews' and its license plate number was 2FE305.

Teller Alicia Jailor also remembered the red Cadillac. At trial, she identified Andrews' car as a vehicle she had observed several times circling the building without making a transaction. She also testified that two days before the robbery, at around 5:00 in the evening, the same red Cadillac conducted a transaction, then circled around the building while an individual inside the vehicle pointed towards a fence behind the building.

Detective Vaughn drove to 4220 Alverado Drive in Fort Wayne, the registration address for Andrews' red Cadillac. Detective Vaughn observed Andrews leaving his house and approaching the suspect vehicle. Andrews appeared nervous and started his car. Detective Vaughn asked him to step out of the vehicle. When Andrews exited the car, Detective Vaughn noticed a large stack of money underneath the armrest of the front seat and a large bulge in Andrews' pocket. Vaughn asked Andrews what the bulge was and Andrews produced a bundle five and ten dollar bills.

Detective Vaughn informed Andrews he was under investigation in connection with a robbery and asked if the detectives could interview him. Andrews was told he was not under arrest, and at 10:30 a.m., he signed a written *Miranda* waiver. Detectives Craig Wise, Mike Bennington, and Mark Heffelfinger were also present. These three detectives secured the outside of Andrews' residence.

Detective Vaughn asked Andrews how he came to be in possession of the cash in his pocket and in his car. His initial response was that he came home from work at about

6:30 a.m. that morning and then left for the gym. Andrews claimed that on the way to the gym he discovered his tire was going flat and called a friend for help. Andrews told Detective Vaughn that his friend met him and gave him two stacks of money and a white plastic bag in payment for a debt.

While Andrews was speaking to Detective Vaughn, the other detectives proceeded toward the house. They rang the bell, but no one answered the door. Detectives Heffelfinger and Wise went around the back of the house and observed smoke rising from a grill on Andrews' second story balcony. Detective Heffelfinger returned to Andrews and asked him if anyone was home. Andrews told the detectives that no one was in the house. Heffelfinger then asked if Andrews was cooking something and if Andrews wanted him to put out the fire. Andrews responded, "No, just don't worry about it, let it go."

Heffelfinger and Wise became concerned that Andrews might be destroying evidence. Wise climbed on top of a fence surrounding Andrews' backyard in order to look up onto the balcony.[1] From this vantage point, Wise observed burning paper on an open grill. Wise then climbed onto the balcony and realized that the burning papers had dollar symbols on them and were actually money bands. The paper was very fragile and badly burnt.

It was raining outside and the fire and water were contributing to the rapid deterioration of the evidence. Detectives Wise and Heffelfinger entered the balcony and took a picture of the items on the grill, using a Polaroid camera. In addition, they covered the grill with an umbrella

---

[1] According to testimony, the fence surrounds the property and is about six feet high. The balcony in question is also about six feet off the ground.

and eventually decided to place the lid on the grill to protect the evidence until crime scene technicians arrived.

During this time, Detective Vaughn continued to question Andrews. In Andrews' second version of events, his friend, one Rusty James,[2] brought another person to help with his flat tire. Andrews claimed these two men fixed his tire and then asked to use his car. He agreed and these two individuals left in his automobile. Andrews claimed that when the two men returned, they give him two stacks of money and a bag full of money straps, which they told him to destroy. This alleged exchange occurred at an apartment complex near the credit union. Andrews also admitted that the two individuals had several firearms in their car and were armed when they borrowed his car.

Detective Vaughn confronted Andrews about a pair of shoes that had been seen on the roof of a carport at the same apartment complex where the alleged vehicle exchange had occurred. In response, Andrews gave a third story. In this story, Andrews admitted that he had been in contact with a Rusty James previously and had arranged to meet him and another man at the apartment complex and lend James his red Cadillac. Andrews claimed these men told him they wanted to rob a bank, and he agreed to lend them his car and his shoes. Andrews admitted that he knew the car would be used to rob a bank. The two individuals left with Andrews' car and shoes, and when they returned they gave him two stacks of paper money, a paper bag with money straps, and his shoes. Andrews told Vaughn that he no longer wanted the shoes and threw them onto the roof. The other men left in a white car and Andrews went home, placed the white bag full of money straps on the grill, sprayed it with lighter fluid, and lit it on fire.

---

[2] The police were unable to locate any individual named Rusty James.

Andrews agreed to give a formal, taped interview. In his fourth and final version of events, Andrews admitted that he had arranged with said Rusty James and another man to meet at a designated location. These two men would take Andrews' car and his shoes, rob the credit union, and then come back. On the morning of the robbery, Rusty James called him on the phone and they met at the designated spot, transferred the shoes and the car, and Andrews waited for the two men to return. Andrews also admitted that he had seen firearms in the hands of the two men when they entered his car. When the two men returned, they gave Andrews some money, his shoes, and the money straps to destroy. Andrews admitted he threw the shoes on the carport because he thought they had been used in a robbery.

The government charged Andrews with one count of bank robbery, 18 U.S.C. § 2113(a) and (d) and one count of unlawfully using a firearm during a crime of violence, 18 U.S.C. § 924(c). Andrews was prosecuted under an aiding and abetting theory on both counts. The jury convicted him of both counts. The district court sentenced Andrews to 57 months for the bank robbery and a consecutive term of 84 months on the firearm count.

## II.  Discussion

### A.  Motion to Suppress

Andrews moved to suppress any evidence related to the money wrappers found on the grill. The district court denied this motion, finding that the potential for the evidence to be destroyed by either fire or rain constituted exigent circumstances justifying an exception to the warrant requirement.

When reviewing a district court's denial of a motion to suppress, this Court reviews factual findings for clear error and legal questions de novo. *United States v. Fields*, 371

F.3d 910, 914 (7th Cir. 2004) (citing *United States v. Breland*, 356 F.3d 787, 791 (7th Cir. 2004)). The question of whether exigent circumstances, justifying a warrantless search, were present is a mixed question of fact and law, reviewed under a de novo standard. *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000).

Although warrantless entries into a home are considered presumptively unreasonable and a violation of the Fourth Amendment, a search based upon exigent circumstances may be constitutionally permissible.

> [Warrantless] searches are constitutionally permissible . . . where there is probable cause and exigent circumstances create a compelling need for official action and insufficient time to secure a warrant. *United States v. Marshall*, 157 F.3d 477, 481-82 (7th Cir. 1998). The government has the burden of proving that its officers had an objectively reasonable basis for believing such exigent circumstances existed at the time of the warrantless entry. *Id.* at 482. Exigent circumstances have been found where officers had an objectively reasonable fear that evidence was about to be destroyed or removed. *Id.*; *Mincey v. Arizona*, 437 U.S. 385, 394 (1978). The relevant focus is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced agent to believe that evidence might be destroyed or removed before a warrant could be secured. *Marshall*, 157 F.3d at 482.

*United States v. Rivera*, 248 F.3d 677, 680-81 (7th Cir. 2001).

When reviewing a warrantless search to determine if exigent circumstances existed, this Court conducts an objective review, analyzing whether the government met its burden to demonstrate that a reasonable officer had a "reasonable belief that there was a compelling need to act and no time to obtain a warrant." *United States v.*

*Saadeh*, 61 F.3d 510, 516 (7th Cir. 1995) (citing *United States v. Foxworth*, 8 F.3d 540, 544 (7th Cir. 1993), *cert. denied*, 511 U.S. 1025 (1994)).

The district court found the following facts:

—The detectives knew that Andrews was a suspect in the robbery of the Midwest America Federal Credit Union earlier that morning and that his car may have been involved.

—The detectives knew a "wad of bills" was found in Andrews' car.

—The detectives had seen "flames and smoke" coming from a grill in the back of Andrews' house.

—They had rung the doorbell and had been told by Andrews that no one was home at his house.

—Andrews was asked if he wanted the fire to be put out, to which he responded, "No, just don't worry about it, let it go."

—While Detective Wise was on top of the fence, with his hands on the railing of the balcony, he could observe that paper was being burned on the grill.

—After climbing on the balcony to get a closer look, Detective Wise could see that the papers being burned were money wrappers.

The district court did not commit clear error in making these factual findings. Each finding was well-supported by testimonial evidence.

A reasonable officer, given this situation, would have had probable cause to believe evidence would be destroyed before a warrant could be obtained if the officers on the scene did not intervene. "We repeatedly have held that the potential that evidence . . . will be destroyed gives rise

to exigent circumstances." *Saadeh*, 61 F.3d at 516 (citing *United States v. Robles*, 37 F.3d 1260, 1263 (7th Cir. 1994); *United States v. Talkington*, 843 F.2d 1041, 1044 (7th Cir. 1988)). Even ignoring the observations of Detective Wise, the detectives had probable cause and a reasonable basis to believe evidence was being destroyed.

In this case, the evidence was literally burning. The warrant requirement does not compel police officers to stand idly by while evidence is destroyed in front of them. The exigent circumstances exception was created to avoid just such a scenario.

## B. Motion for a Directed Verdict

At the close of the government's case, Andrews moved for a judgment of acquittal as to the allegation that he aided and abetted the use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). The district court denied the motion. Andrews renewed his motion at the close of the trial, and the district court again denied the motion. Andrews appeals these denials, alleging that the government did not present sufficient evidence for a jury to have convicted him of this charge.

When evaluating the sufficiency of evidence presented at trial to support a conviction, this Court inquires whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Tanner*, 941 F.2d 574, 586 (7th Cir. 1991) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Garrett*, 903 F.2d 1105, 1109 (7th Cir.), *cert. denied*, 498 U.S. 905 (1990)); *see also United States v. Wallace*, 212 F.3d 1000, 1003 (7th Cir. 2000). The record is reviewed in the light most favorable to the government and all reasonable inferences are drawn in the government's favor. *United States v. Jones*, 371 F.3d 363, 365 (7th Cir. 2004) (citing

*United States v. Senffner*, 280 F.3d 755, 760 (7th Cir. 2002)).

Although Andrews alleges that the evidence tying him to the use of the firearm was "thin at best," such evidence is sufficient to uphold a jury's verdict. A jury's verdict will only be reversed "if the record is devoid of evidence from which the jury could reach a finding of guilt." *United States v. Taylor*, 226 F.3d 593, 596 (7th Cir. 2000) (citing *United States v. Johnson-Dix*, 54 F.3d 1295, 1302 (7th Cir. 1995); *United States v. Rosalez-Cortez*, 19 F.3d 1210, 1215 (7th Cir. 1994)).

This Court has defined the elements necessary to be held liable for a violation of 18 U.S.C. § 924(c) under an aiding and abetting theory.

> [T]he jury must find that the defendant knowingly and intentionally assisted the principal's use of a dangerous weapon in a violent felony. *See United States v. Woods*, 148 F.3d 843, 848 (7th Cir. 1998). This requires finding that (1) the defendant knew, either before or during the crime, of the principal's weapon possession or use; and (2) the defendant intentionally facilitated that weapon possession or use once so informed. *See id*. However, "[m]erely aiding the underlying crime and knowing that a gun would be used or carried cannot support a conviction under 18 U.S.C. § 924(c)." *Id.*; *see also United States v. Bancalari*, 110 F.3d 1425, 1430 (9th Cir. 1997); *United States v. Medina*, 32 F.3d 40, 45 (2d Cir. 1994).

*Taylor*, 226 F.3d at 596-97; *see also United States v. Daniels,* 370 F.3d 689, 691 (7th Cir. 2004).

This standard leaves the Court with two questions in the instant case: (1) could a rationale trier of fact have found that Andrews knew the men who borrowed his car to rob the credit union possessed a weapon; and (2) could a rationale trier of fact have found that Andrews facilitated

the use, carrying, or possession of the weapon after he was informed of its existence?[3]

During a taped interrogation, which was presented to the jury, Andrews admitted that he had seen the two men holding guns in their hands prior to the robbery and before they drove away in his car. We believe a rational jury could find that this statement demonstrates Andrews' knowledge that the two men who borrowed his car possessed firearms.

As to the second question, Andrews claims that he did nothing to facilitate the use of the weapon and did not know that James planned to use it in the robbery. Taking the evidence in the light most favorable to the government, a reasonable jury could certainly have found that Andrews facilitated the use of a firearm by providing armed individuals transportation to and from a bank robbery.

Escape is considered part of a robbery and the use of a firearm during an escape is a violation of 18 U.S.C. § 924(c). *See United States v. Smith*, 415 F.3d 682, 689 (7th Cir. 2005). Even if Andrews did not know that the individuals to whom he lent his vehicle planned on using their weapons while robbing the credit union (a dubious proposition at best), ample evidence supports the conclusion that Andrews was aware that firearms would be present in the car during the getaway. This alone could serve as the basis for Andrews' conviction. *See id.*

Although Andrews did not personally transport the principals to the scene or provide them with their weapons, he provided the vehicle to transport the principals and their firearms. A reasonable jury could infer that the purpose of Andrews' vehicle was to provide a car that could not be

---

[3] These questions closely parallel Jury Instruction 29 in the instant case.

traced to the principals, thus aiding in the facilitation of the crime. "An aider presumptively intends the natural and probable consequences of his actions, and in this case, the probable consequences of knowingly providing aid to an armed bank robbery is the commission of an armed bank robbery, not an unarmed bank robbery." *Woods*, 148 F.3d at 847 (citation omitted); *cf. Taylor*, 226 F.3d at 597 ("a reasonable jury could infer from the inherently violent character of carjackings that [the defendant] either anticipated or knew that [his accomplice] was going to use a weapon"). While James may never have directly told Andrews that he intended to use a gun to rob the bank, a specific declaration by James is unnecessary for a reasonable jury to have found that Andrews facilitated the armed robbery. Andrews' assertion that he "had no reason to know that James planned to take the gun with him when he robbed the bank" defies logic.

Viewing the evidence in the light most favorable to the government, a rational trier of fact could have believed that Andrews was aware of the principals' possession of firearms and their intent to commit a bank robbery. This knowledge, coupled with his decision to lend the principals his car and shoes, thereby making the successful completion of the crime more likely, is sufficient to support a conviction as an aider and abettor. *See United States v. Ortega*, 44 F.3d 505, 508 (7th Cir. 1995).

## III.  Conclusion

For the above stated reasons, we AFFIRM the judgment of the district court.

No. 05-1974 13

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*