In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2895

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TIMOTHY HUDDLESTON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 07 CR 30011—**Jeanne E. Scott**, *Judge.*

ARGUED MAY 4, 2009—DECIDED JANUARY 27, 2010

Before KANNE and EVANS, *Circuit Judges*, and DOW, *District Judge.**

DOW, *District Judge.* Timothy Huddleston was charged in a three-count superseding indictment with possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B);

---

* The Honorable Robert M. Dow, Jr., of the United States District Court for the Northern District of Illinois, sitting by designation

possession of a firearm having previously been con-
victed of a felony offense, in violation of 18 U.S.C.
§ 922(g)(1); and possession of a firearm in furtherance of
drug trafficking, in violation of 18 U.S.C. § 924(c). A jury
found Huddleston guilty of all three charges. Prior to
Huddleston's trial, the district court denied his motion
to suppress evidence seized from him without a search
warrant at the time of his arrest.

Huddleston now appeals the district court's decision
to allow the Government to introduce evidence seized
from him. In addition, Huddleston contends that there
was insufficient evidence to support his conviction on
both the intent to distribute charge and the possession of
a firearm in furtherance of a drug-trafficking crime
charge. For the following reasons, we affirm the judg-
ment of the district court.

## I. Background

In December 2006, Huddleston was living with his
girlfriend, Tarana White, at 1850 South Wirt Street. Tarana
White rented the Wirt Street house from her parents,
Walter and Dorothy White. On December 30, 2006,
Dorothy White called police and reported that a man—
Huddleston—was in the Wirt Street house with a gun.
The responding officers arrived and stopped a few
houses away, where they spoke with Dorothy White.
Mrs. White told the officers that she owned the house,
which she rented to her daughter, and that Huddleston
did not have permission to be there. In addition,
Mrs. White informed the officers that Huddleston had

threatened her daughter's life earlier that evening. Mrs. White told the officers that she had found Huddleston asleep on the couch in the house holding what appeared to be a gun, and that, as far as she knew, he was still asleep. One of the responding officers testified that he knew that Huddleston had a "violent felony past" that included charges of aggravated discharge of a weapon.

Without obtaining a search warrant, the officers opened the door to the Wirt Street house and announced their presence. They observed Huddleston asleep on the couch; he did not respond. The officers then entered the house, confirmed that Huddleston had a gun in his hand, and disarmed and arrested him. The gun was a loaded .44-caliber revolver. While searching Huddleston incident to the arrest, the officers found what appeared to be crack cocaine in Huddleston's pockets. The officers removed a larger bag of the substance from Huddleston's front pants pocket and a smaller bag from his jacket pocket. Forensic analysis later confirmed that the larger bag contained 5.2 grams of cocaine base (crack), and the smaller bag contained .4 grams of cocaine base.

Huddleston was charged with (1) possession of a controlled substance with intent to distribute; (2) possession of a firearm having previously been convicted of a felony offense; and (3) possession of a firearm in furtherance of drug trafficking. After an evidentiary hearing, the Magistrate Judge prepared a lengthy report and recommendation in which he recommended that

Huddleston's motion to quash his arrest and suppress evidence be denied under both the apparent authority consent and exigent circumstances exceptions to the warrant requirement. The District Court overruled Huddleston's objections and adopted the Magistrate Judge's report and recommendation, finding that the warrantless entry was justified by the existence of exigent circumstances. Following a jury trial, Huddleston was convicted of all charges against him and was sentenced to a term of 180 months' imprisonment, consisting of 120 months on Count I and 85 months on Count 2, to run concurrently, and 60 months on Count 3, to run consecutively to the imprisonment for Counts 1 and 2.

## II.  Analysis

### A.  Motion to Suppress

Prior to his trial, Huddleston moved to suppress evidence of the weapon and drugs seized by officers following the warrantless entry into the Wirt Street house. The district court denied the motion, finding that exigent circumstances existed justifying an exception to the warrant requirement.

Warrantless searches and seizures within a home are considered presumptively unreasonable and a violation of the Fourth Amendment. *United States v. Bell*, 500 F.3d 609, 612 (7th Cir. 2007). However, warrantless searches are constitutionally permissible "under certain narrowly proscribed exceptions," including where exigent circumstances require officers to "step in to prevent serious

injury and restore order." *Id.* In determining whether exigent circumstances existed, courts "analyze the situation from the perspective of the officers at the scene." *Leaf v. Shelnutt*, 400 F.3d 1070, 1081 (7th Cir. 2005). "Exigent circumstances exist if a[n] officer had an objectively 'reasonable belief that there was a compelling need to act and no time to obtain a warrant.'" *Id.* at 613 (quoting *United States v. Andrews*, 442 F.3d 996, 1000 (7th Cir. 2006)). For example, where police reasonably believe that their safety, or the safety of the public, may be threatened, exigent circumstances exist. *United States v. Webb*, 83 F.3d 913, 916 (7th Cir. 1996). In reviewing a district court's denial of a motion to suppress, this Court reviews factual findings for clear error and legal questions *de novo*. *Andrews*, 442 F.3d at 1000. The question of whether exigent circumstances existed is a mixed question of fact and law, reviewed under a *de novo* standard. *Id.*

Here, the officers were told that Huddleston—whom they knew to have a criminal history involving the discharge of a firearm—had a gun and was trespassing in the home of a woman whom he had threatened to kill earlier that evening. Based on those facts, it was reasonable for the officers to conclude that they were dealing with an armed man poised to carry out a death threat, who would not hesitate to discharge his weapon as he had in the past. In these circumstances, the officers had reasonable grounds to believe that Huddleston posed an immediate threat to their safety and the safety of others in the neighborhood. A number of other circuits have "found the presence of guns to justify

searches and seizures on the basis of exigent circum-stances." *United States v. Reed*, 935 F.2d 641, 643 (4th Cir. 1991) (holding that the presence of a sawed-off shot-gun in plain view could have constituted a threat to the personal safety of the officers and thus justified the warrantless seizure); see also *United States v. Rodgers*, 924 F.2d 219, 222-23 (11th Cir. 1991) (exigent circumstances arose when police saw handguns that suspect, a convicted felon, was not allowed to possess, lying on a couch); *United States v. Lindsey*, 877 F.2d 777, 780-82 (9th Cir. 1989) (information about presence of guns and bombs justified warrantless entry); *United States v. Hill*, 730 F.2d 1163, 1170 (8th Cir. 1984) (entry justified by officer's observation through a sliding glass door of a pistol on a bookcase); *United States v. McKinney*, 477 F.2d 1184, 1186 (D.C. Cir. 1973) (sawed-off shotgun lying on night table in hotel room was exigent circumstance justifying warrantless entry and seizure).

The fact that Huddleston was asleep does not render the officers' belief that Huddleston posed an immediate threat unreasonable. As the district court concluded, there was a real risk that Huddleston—who was fully clothed, sitting up and holding the gun—could awaken at any time. Nor are we persuaded that it was unreasonable for the officers to conclude that Huddleston was trespassing without inquiring as to whether he had Tarana White's permission to be at the house. Dorothy White had in-formed the officers that Huddleston did not have permis-sion to be there; that information justified their belief that he was trespassing. Again, our inquiry focuses on "the circumstances as they appeared at the moment of entry,"

*United States v. Arch*, 7 F.3d 1300, 1304 (7th Cir. 1993), "from the perspective of the officers at the scene." *Leaf*, 400 F.3d at 1081. "Accordingly, we ask not what the police *could* have done," but whether their entry was justified based on what they knew at the time. *United States v. Marshall*, 157 F.3d 477, 482 (7th Cir. 1998). Here, based on the information provided by Dorothy White, the officers' belief that Huddleston was trespassing was reasonable.[1] In short, we agree with the district court that the warrantless search fell within the exigent circumstances exception to the warrant requirement.[2]

### B. Sufficiency of the Evidence Challenge to Count 1

Huddleston also contends that the evidence presented at trial was insufficient to support a finding that he intended to distribute the cocaine base. In considering a sufficiency of the evidence challenge, this Court considers the evidence in the light most favorable to the Govern-

---

[1] The fact that Huddleston actually may not have been a trespasser does not change the analysis. The sources of the danger giving rise to the exigent circumstances were the gun thought to be in Huddleston's possession, the threats that he had made earlier in the evening, and his known violent past—any of which separately may have justified the officers' actions and all of which collectively clearly did so.

[2] Because we have found that the exigent circumstances exception defeats Huddleston's Fourth Amendment challenge, we need not address whether the apparent authority consent exception also applies in the circumstances of this case, as the Government urges and the Magistrate Judge concluded.

No. 08-2895

ment, defers to the credibility determination of the jury, and overturns a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. *United States v. Duran*, 407 F.3d 828, 839 (7th Cir. 2005). Thus, "[t]he standard of review facing a defendant on her claim that the jury had insufficient evidence to convict is 'a daunting one.' " *United States v. Seymour*, 519 F.3d 700, 714 (7th Cir. 2008).

Here, the Government presented sufficient evidence to support the inference of an intention to distribute. Officers seized 5.6 grams of cocaine base from Huddleston at the time of his arrest. A drug-trafficking expert testified at trial that 5.6 grams constituted a distributable amount. And even if 5.6 grams is not "so large as immediately to suggest an intention to distribute, [it] is not so small as to be inconsistent with that inference," and the jury heard other evidence from which to infer that intent. *United States v. Brown*, 7 F.3d 648, 656 (7th Cir. 1993) (concluding that the seizure of only 2.3 grams of crack was not inconsistent with an inference of intent to distribute). For example, Huddleston was carrying a loaded firearm. This Court has recognized that "weapons found in conjunction with narcotics may be considered 'tools of the trade,' and that the presence of a firearm under such circumstances supports the inference of an intent to distribute." *Id.* Furthermore, Huddleston held a smaller quantity of drugs— .4 grams—in his coat pocket, and a larger quantity in his pants pocket. The jury reasonably could have inferred that the smaller quantity was ready for sale. Huddleston also was carrying a significant amount of

cash, including twelve twenty dollar bills, at the time of his arrest. This evidence, combined with the fact that Huddleston was unemployed and the drug-trafficking expert's testimony that addicts typically purchase one-tenth of a gram of crack for twenty dollars, supports the inference that Huddleston was selling drugs.

While the evidence may not have been overwhelming, it was sufficient to support the jury's verdict. Because the record is not "devoid of evidence from which a reasonable jury could find . . . beyond a reasonable doubt" that Huddleston intended to distribute the drugs found in his possession, his conviction on Count 1 of the superseding indictment must be upheld. *Brown*, 7 F.3d at 656.

### C.  Sufficiency of the Evidence Challenge to Count 3

Finally, Huddleston challenges his conviction for possession of a firearm in furtherance of a drug-trafficking crime on the ground of insufficient evidence. We have explained that "[t]he 'in furtherance of' element requires that the weapon further, advance, move forward, promote or facilitate the drug-trafficking crime." *Duran*, 407 F.3d at 840. The mere presence of a weapon at the scene of a drug crime is not sufficient to satisfy the 'in furtherance of' element; "there must be 'a showing of some nexus between the firearm and the drug selling operation'"—for example, "that a possessed gun [furthered] a drug-trafficking offense by providing the dealer, his stash or his territory with protection." *Id.* In distinguishing between "this type of possession-for-protection" and "circumstantial or innocent weapon possession," we are

No. 08-2895

guided primarily by common sense. *Id.* In addition, the following factors also may be useful to consider: "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* (citing *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir.), *modified on denial of rehearing*, 226 F.3d 651 (5th Cir. 2000)).

Here, a number of the pertinent factors support the inference that Huddleston did not possess the gun innocently, but rather to protect himself, his stash, and his profits. First, the drug activity at issue—distribution—might reasonably call for the use of a weapon for protection, both during the drug deals and afterward to protect the remaining stash and profits. Second, the gun was in Huddleston's hand, and thus highly accessible. Third, the type of gun—a revolver—easily could be concealed and carried to drug transactions. Fourth, the gun was loaded. And fifth, the gun was found within a few inches of the drugs. In addition, common sense supports a finding that Huddleston's gun protected his drugs and money against robbery. This plainly was not a case of "innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *Duran*, 407 F.3d at 840 (quoting *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001)). Huddleston held the loaded weapon in his hand, and had drugs and substantial sums of cash in his pockets. In light of these facts, a reasonable jury easily could have concluded that

Huddleston possessed the gun to protect himself and his stash, in furtherance of his distribution of cocaine base.

Huddleston argues that the Government improperly has presented inconsistent theories as to why he possessed the gun, arguing at the suppression hearing that Huddleston had the gun because he intended to attack Tarana White, and arguing at trial that the gun was protecting his stash of drugs. But these theories are not necessarily inconsistent; Huddleston conceivably could have intended to use the gun both to assault his girlfriend and to provide protection for himself. To the extent that Huddleston overlooks these dual purposes, he misapprehends the Government's contentions. The Government argues that, at the time the responding officers entered the Wirt Street house, they reasonably could have believed that Huddleston intended to attack his girlfriend with the gun. As discussed above, we agree. The Government also contends that the discovery of the drugs and cash on Huddleston supports the further inference or conclusion that Huddleston possessed the gun to further his drug dealing. Again, we agree. For all these reasons, there was ample evidence to support the conviction on Count 3.

### III. Conclusion

For the above stated reasons, the judgment of the district court is AFFIRMED.