NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 29, 2012
Decided March 28, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 11-1871

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 09 CR 52-1 |
| KENOSHA FULLILOVE, *Defendant-Appellant.* | Virginia M. Kendall, *Judge.* |

**O R D E R**

Kenosha Fullilove was convicted by a jury of conspiring to commit bank robbery, see 18 U.S.C. § 371; bank robbery, see *id.* § 2113(a); and using a firearm in furtherance of a crime of violence, see *id.* § 924(c). On appeal she challenges only the sufficiency of the evidence to support the firearm conviction. Because a rational jury could have found Fullilove guilty of the offense beyond a reasonable doubt, we affirm the judgment.

**I**

Nickolas Lee was alone when he entered a Chicago branch of Chase Bank in November 2006 and robbed two tellers at gunpoint of $109,000. He escaped undetected, but his luck ran out when he returned to the same branch in May 2007 and robbed it again. Lee was apprehended and implicated Caroline Rivera, then a current employee of the branch in

question, and Fullilove, a former employee, as collaborators in the November robbery. The FBI interviewed Rivera and Fullilove, but initially only Lee and Rivera were indicted. Both pleaded guilty to armed bank robbery, 18 U.S.C. § 2113(a), (d), and Lee also pleaded guilty to brandishing a firearm during the offense, *id.* § 924(c)(1)(A), (c)(4). As part of their plea agreements, Rivera and Lee agreed to cooperate with the government's investigation in exchange for possible sentencing concessions. Fullilove was indicted a few months later.

At Fullilove's trial, Lee and Rivera testified for the government. Lee explained that he met Fullilove in the summer of 2006 and that, because she was short of money, she had suggested that they rob the Chase branch where she used to work. Fullilove proposed that they meet with her friend, Rivera, who still worked at the branch and could provide them with the bank's security procedures. Rivera confirmed at trial that Fullilove had arranged the meeting. She added that Fullilove had introduced Lee as someone who "robs banks for a living" and said that they planned to rob the location where she worked. Rivera agreed to participate, and the trio decided that Lee would rob the branch the next morning and that Rivera, who was scheduled to work, would play the role of "innocent victim" to facilitate his entry into the bank's vault. When asked by Fullilove at the meeting how to gain access to the vault, Rivera responded that the vault could be opened only with both of two security codes held by different employees. Rivera would have one of the codes, and she predicted that Lee would not have difficulty demanding the second code from whomever was working because Chase employees are trained to comply with any demands in the event of a robbery. Even so, Rivera continued, based on the group's "discussion about how [Lee] did things for a living," she believed that Lee would bring a gun to the robbery and "harm the other [employee] if they didn't want to participate." In fact, she changed her mind about participating in the robbery and took the day off out of fear that she or a coworker would be harmed.

Lee testified that Fullilove had called him the morning of the robbery to make sure that he was awake and to tell him she was on her way. When she picked him up, Lee continued, he was carrying a .357 Magnum revolver in his waistband. Fullilove drove him down the block to his car, and they decided to meet later in the day at her apartment to divide the proceeds from the robbery. After Fullilove dropped him off, Lee drove directly to the bank. When he did not see Rivera, he forced two other employees at gunpoint to use their security codes to open the vault, where he helped himself to $40,000 to $45,000. Later, he reconvened with Fullilove as planned and gave her $10,000.

Matthew Alcoke, an FBI agent who interviewed Fullilove after her arrest, also testified at trial. According to him, Fullilove admitted during this interview that she had planned the robbery with Lee and Rivera and had reviewed the bank's security procedures with Rivera. Agent Alcoke asked Fullilove if they had discussed whether Lee "should bring

something with him to the bank robbery in order to make Ms. Rivera's innocent victim role look good," and Fullilove responded, "If you mean a pistol, then, no." But later in the interview, the agent elaborated, Fullilove had said that she was "80 percent sure" that a gun was discussed. She also informed Agent Alcoke that Lee had told her on the morning of the robbery that he was about to rob the bank. The agent asked Fullilove if Lee had been carrying a gun that morning, and she responded, "I think so, yeah."

The jury found Fullilove guilty of all three charges. Fullilove moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c) or, in the alternative, a new trial under Rule 33, but the district court denied this motion. At sentencing the court concluded that Fullilove's total offense level of 24 and criminal history category of I yielded a guidelines imprisonment range for the bank robbery of 51 to 63 months. But, it continued, Fullilove also faced a mandatory consecutive term of at least 84 months for her violation of § 924(c). See 18 U.S.C. § 924(c)(1)(A)(ii). The court sentenced Fullilove to a total of 120 months' imprisonment: concurrent sentences of 36 months each for the conspiracy and robbery and a consecutive sentence of 84 months for the § 924(c) offense.

## II

Fullilove argues on appeal that the evidence underlying her § 924(c) conviction is insufficient, because it failed to establish either that Lee's use of a gun was reasonably foreseeable to her or that she aided and abetted his use of the gun. We view the evidence in the light most favorable to the government and evaluate whether a rational jury could have found Fullilove guilty of the offense beyond a reasonable doubt. See *United States v. Aldridge*, 642 F.3d 537, 544 (7th Cir. 2011); *United States v. Andrews*, 442 F.3d 996, 1001 (7th Cir. 2006).

Turning first to Fullilove's liability as a coconspirator, we note that her firearm conviction is sustainable under *Pinkerton v. United States*, 328 U.S. 640 (1946), if a gun was used in furtherance of the conspiracy and its use was reasonably foreseeable to her. See *United States v. Pisman*, 443 F.3d 912, 913 (7th Cir. 2006). With respect to the latter point, we find ample evidence that Lee's use of a gun during the bank robbery was reasonably foreseeable. Although Fullilove initially was not forthcoming with Agent Alcoke, she eventually admitted that she was 80 percent certain that a gun was discussed at the planning meeting, and also said, "I think so, yeah" when asked if she saw Lee with a gun when she drove him to his car on the morning of the robbery. Fullilove nonetheless contends that she could not have foreseen the use of a firearm because Rivera had said that bank employees are trained to comply with a robber's demands and thus (Rivera thought) they would willingly would enter their security code for Lee. Even so, Fullilove knew that Lee would need a code from at least one other employee in order to open the vault, and

Rivera testified that she understood from the planning meeting that Lee would wield a gun to ensure the second banker's cooperation. Based on these facts, a rational jury easily could have concluded that the use of a firearm during the robbery was foreseeable to Fullilove. See *United States v. Simmons*, 581 F.3d 582, 587–88 (7th Cir. 2009); *United States v. Roberson*, 474 F.3d 432, 433 (7th Cir. 2007); *United States v. McLee*, 436 F.3d 751, 758 (7th Cir. 2006.)

Although Fullilove's liability under *Pinkerton* is sufficient by itself to support the guilty verdict, in the interest of completeness we also address her contention that the evidence did not support a finding that she aided and abetted Lee's use of the gun. To convict under § 924(c) on a theory of aiding and abetting, the government must prove that the defendant knowingly facilitated the principal's use, carrying, or possession of a firearm during and in relation to any crime of violence or drug trafficking crime. *United States v. Smith*, 576 F.3d 681, 687 (7th Cir. 2009); *Andrews*, 442 F.3d at 1002. Fullilove contends that her admission to Agent Alcoke that a gun was discussed at the planning meeting establishes at most "possible knowledge" of the use of a gun. But Fullilove overlooks that, under their plan, the robbery necessarily involved coercing at least one innocent employee to provide a security code, and she ignores her admission that Lee was carrying a gun when she picked him up the morning of the robbery. It was reasonable for the jury to infer that Fullilove knew that Lee would bring the weapon to the crime. See *Andrews*, 442 F.3d at 1002; *United States v. Woods*, 148 F.3d 843, 846–48 (7th Cir. 1998). And once knowledge of an offense is established, "it does not take much to satisfy the facilitation element." *United States v. Daniels*, 370 F.3d 689, 691 (7th Cir. 2004) (internal quotation marks and citations omitted). The jury was entitled to conclude that Fullilove facilitated the weapon's use by dropping off Lee, who was armed, at his car so that he could drive to the bank and commit the robbery. See *Andrews*, 442 F.3d at 1002–03; *Daniels*, 370 F.3d at 691; *United States v. Taylor*, 226 F.3d 593, 597 (7th Cir. 2000); *Woods*, 148 F.3d at 848.

Accordingly, we AFFIRM the judgment of the district court.