In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-3331

YUMING DENG,

*Plaintiff-Appellant*,

*v.*

SEARS, ROEBUCK AND CO.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 04 C 6571—**Joan B. Gottschall**, *Judge*.

ARGUED SEPTEMBER 11, 2008—DECIDED JANUARY 5, 2009

Before EASTERBROOK, *Chief Judge*, and POSNER and
EVANS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.    Yuming Deng was a
statistical modeler at Sears Roebuck. His job was to de-
velop software and compile data that could be analyzed
to shed light on which customers should be extended
how much credit. In February 2001 his supervisors
gave Deng a performance review that he deemed unwar-
ranted. Tempers flared, and Deng soon stopped working,

claiming to be disabled. But while on leave he repeatedly came to his office, only to be ushered out, because Sears forbids persons on leave to come to work (something that they are supposedly unable to do). Deng once threatened a supervisor before departing—and he continued to pay surreptitious visits. On one of these, shortly before he quit, Deng deleted a great deal of data and the models he had been using to analyze the information. When Deng's supervisor discovered the deletions, Sears had much of the material restored from backup tapes, but Sears could not tell whether the restoration was complete—and the restoration not only was costly (Sears estimates that $40,000 to $50,000 in labor and computer time went into the task) but also delayed projects that Deng's co-workers were conducting using these data and models.

Supervisors concluded that Deng had erased the information in retaliation for the bad review and asked Marc Peskin, Sears's Manager of Corporate Investigations, to look into the affair. Peskin concluded that Deng had maliciously destroyed valuable data and reported the matter to the police in Hoffman Estates, Illinois, where Deng had been employed. Detective Carl Baumert concluded that Deng had violated 720 ILCS 5/16D-3(a)(3), which prohibits tampering with computer files without the permission of the files' owner. (Deng had not asked for permission to delete these files.) Baumert tried to discuss the subject with Deng, but he left Illinois without notifying Baumert (or anyone at Sears) of his new address. A prosecutor agreed with Baumert's assessment and filed formal charges. Eighteen months later Deng

was found in Massachusetts, arrested on a bench war-
rant, and returned to Illinois—where the charge was
dismissed at the preliminary hearing after a witness failed
to appear. The prosecutor asked the judge to continue
the hearing; when the judge refused, the prosecutor filed
a *nolle prosequi* and turned the papers over to another
Assistant State's Attorney. Deng still could have been
indicted (a preliminary hearing is necessary in Illinois
only when the prosecutor wants to avoid presenting
the case to a grand jury), but was not.

   Deng then turned the tables and sued Sears for
malicious prosecution. The parties are of diverse citi-
zenship, and the stakes exceed $75,000, so 28 U.S.C. §1332
permits the suit to be filed in federal court. Illinois
law governs. To prevail, Deng must show (among other
things) that the criminal case ended in his favor, that the
charge was not supported by probable cause, and that the
accuser made the charge with malice. See *Swick v. Liautaud*,
169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996). A dis-
missal is a favorable disposition—if the charge is not
refiled, as this was not—in the sense that the criminal
prosecution is over. But *Swick* holds that a dismissal by
way of a *nolle prosequi* does not count as "favorable" to the
accused if "the abandonment is for reasons not indicative
of the innocence of the accused." 169 Ill. 2d at 513, 662
N.E.2d at 1243. The district court concluded that the
prosecutor dismissed the charge against Deng because
the state judge had declined to grant a continuance, not
because the prosecutor had come to think Deng innocent.
That led to a grant of summary judgment in Sears's favor.

As Deng sees matters, a statement in *Swick* that the court "adopt[s]" the discussion of favorable termination in *Restatement (Second) of Torts* §660 (1977) means that a dismissal must be taken as favorable to the accused unless one of the four particular contra-indications mentioned in §660 has been established. None of these four—compromise with the accused, misconduct by the accused designed to avert a trial, mercy requested by the accused, or the reinstitution of charges following the dismissal—occurred here and therefore, Deng insists, he is entitled to prevail on this subject. But a restatement is not a statute; it summarizes doctrines already articulated but does not freeze the development of the common law. Nothing in §660 or anywhere else in the *Restatement (Second) of Torts* says that the dismissal of charges when a witness does not appear at a preliminary hearing must be treated as a resolution favorable to the accused. This is an open question in Illinois.

One may doubt whether it is sensible to answer the question. If criminal charges are dismissed and never reinstated, the accused has won. A technical knockout is a knockout nonetheless. The former accused still must demonstrate the absence of probable cause, and the presence of malice, to win the civil suit. When these things can be established, it is most likely that the criminal charges were dismissed because the prosecutor could not win. How is the prosecutor going to show guilt beyond a reasonable doubt, when the charge is not supported by probable cause? But Illinois has not taken the simplifying step of treating all favorable dismissals the same, and the ambiguous formulation in *Swick*

creates potential problems. How can a judge or jury tell whether the dismissal is "indicative of the innocence of the accused"? A prosecutor may dismiss without giving reasons (as happened here), and a statement in open court may not be comprehensive or tailored to the standards of later tort litigation. Deng dragged the prosecutor through a deposition, an intrusion on the prosecutorial function. The prosecutor gave the "lack of continuance" reason; Deng counters that the prosecutor was a computer illiterate and unable to distinguish good charges from bad. It is hard to believe that Illinois really wants its criminal prosecutors subjected to this kind of inquisition, or that a federal district judge should be opining on an Assistant State's Attorney's competence and the reasons for an exercise of prosecutorial discretion.

A federal court cannot take Ockham's Razor and slice *Swick*'s approach out of Illinois law. *Swick* takes sides on a subject that has divided the states; we must respect its choice. But we can avoid *Swick*'s complexities by skipping to the probable-cause question, for if the charge was supported by probable cause then other issues do not matter. Deng contends that we must pretermit this subject, because his opening brief did not broach it, but that misunderstands federal appellate practice. As the prevailing party, Sears may defend its judgment on any ground preserved in the district court, as this ground was, whether or not the district judge addressed the point. See *Massachusetts Mutual Life Insurance Co. v. Ludwig*, 426 U.S. 479 (1976); *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 439 (7th Cir. 1987).

The facts stated in this opinion's first paragraph establish probable cause to believe that Deng, a disaffected employee, erased valuable data on his way out the door. Deng contends that this impression is mistaken—that Sears's statistical modelers are not only authorized but also expected to delete information that has served its purpose, in order to free up space on the company's servers. One problem with this perspective is that Deng, who was on leave, could not know whether his supervisors and co-workers were still using, or planning to use, the data he erased—he did not ask anyone. Nothing in this record would permit a jury to find that Deng's superiors at Sears believed that all of the information he erased was no longer useful; if they believed that, why spend $40,000 or more to restore it?

A second problem is that, because Deng was on leave, he was not supposed to be at the office in the first place and therefore was not authorized to perform any act at all with or to the data. A third problem is that probable cause is an objective concept. See *Whren v. United States*, 517 U.S. 806 (1996). A person's ability to explain away seemingly damning facts does not negate the existence of probable cause, even though it might provide a good defense should the case go to trial.

Deng left Illinois shortly after deleting the data, and flight adds to the impression that a crime has been committed. See *Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000). Detective Baumert invited Deng to tell his side of the story; he did not use the opportunity and is in no position to complain that Sears, the police, and the prosecutor all drew inferences against him.

Deng's other arguments have been considered but do not require discussion. The judgment is

AFFIRMED