In the

# United States Court of Appeals
### For the Seventh Circuit

———————————

No. 23-2151

JUSTIN SCHIMANDLE,

*Plaintiff-Appellant,*

*v.*

DEKALB COUNTY SHERIFF'S OFFICE
and JOSH DUEHNING,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:21-cv-50477 — **Iain D. Johnston**, *Judge.*

———————————

ARGUED JANUARY 18, 2024 — DECIDED AUGUST 28, 2024

———————————

Before RIPPLE, BRENNAN, and SCUDDER, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Justin Schimandle, a high-school administrator, forcibly restrained a student at school. After an investigation, Detective Josh Duehning of the Dekalb County, Illinois Sheriff's Office submitted affidavits to support an arrest warrant against Schimandle for battery. An Illinois state magistrate judge issued the warrant, and Schimandle turned himself in. The criminal case proceeded to a bench trial. After

the prosecution rested, Schimandle moved for a directed finding, which the trial court granted, and Schimandle was found not guilty.

Schimandle then sued the Dekalb County Sheriff's Office and Duehning, alleging false arrest. The defendants moved for judgment on the pleadings, and the district court granted that motion, dismissing Schimandle's claims. The court found that there was probable cause to arrest Schimandle and that Duehning was entitled to qualified immunity. Arguable probable cause supported Schimandle's arrest, so we affirm the district court.

## I

We view all facts and inferences in the light most favorable to the non-moving party—here, Schimandle—on a motion for judgment on the pleadings. *See Lisby v. Henderson*, 74 F.4th 470, 471–72 (7th Cir. 2023); *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). But where video recordings are referenced in the complaint and central to the claims, we may view those videos in addition to the facts alleged in the complaint. *See Scott*, 550 U.S. at 378; *Esco v. City of Chicago*, 107 F.4th 673, 679 (7th Cir. 2024); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

The facts of this case are disputed. Three videos recorded the incident. Most of the specifics of the encounter cannot be seen on the videos, and the videos do not contain audio. Below, we take Schimandle's description as true, deviating only where the videos contradict Schimandle or to add information that Schimandle does not include.

### A. The Underlying Incident

Schimandle was the Dean of Students at Kishwaukee Education Consortium, a high school in Malta, Illinois.

Kishwaukee offers vocational classes to juniors and seniors with non-violent disciplinary issues from neighboring high schools.

On September 26, 2019, during school hours, Kishwaukee students reported to Schimandle that another student, "C.G.," was in a school bathroom using a vaping device. Schimandle went to the "Commons" area to investigate the report. He searched C.G.'s bag and found a vaping device. Schimandle alleges that as he retrieved the device, C.G. ran up to him, grabbed his wrist, took the bag, and ran off. Schimandle then went to the office to notify his superiors.

Later that day, Schimandle saw C.G. in the Commons area again. Schimandle asked C.G. to come to his office so that he could explain why he had searched C.G.'s bag. C.G. responded with profanity and refused to speak with Schimandle. Schimandle went to his office to call C.G.'s guardian to inform him that C.G. would be suspended because of the incident.

Schimandle returned to the Commons area to notify C.G. of the suspensions. When Schimandle told C.G. about the suspension, C.G. responded, "let me tell you something man to [expletive] man. How would you like it if I searched you?" C.G. also moved toward Schimandle, grabbed Schimandle's pants, and pulled Schimandle toward him. C.G. then tried to reach into Schimandle's pants. Schimandle grabbed one of C.G.'s arms, fearing he would be struck with C.G.'s free arm, and told C.G., "do not touch me again." C.G. ignored the warning, tried to reach into Schimandle's pants again, became more aggressive, and yelled profanity.

As Schimandle tells it, in response and out of fear for his own safety, he bear hugged C.G. and began walking him out of the Commons area. Holding C.G. in that manner, Schimandle walked with him into the foyer through a set of doors. When they moved into the foyer, Schimandle and C.G. fell to the ground, with Schimandle landing on top of C.G. After falling, Schimandle continued holding C.G. on the ground. Schimandle alleges he did so because C.G. continued to struggle and curse, and he feared that releasing C.G. would escalate the incident. Schimandle told C.G., "I can let you go when I feel safe to do so." At that point, a Kishwaukee employee, referred to in Schimandle's complaint as "Mr. Peek," and a school resource officer arrived to assist in restraining C.G. Once the others arrived, Schimandle retreated from the altercation.

**B. The Investigation**

The day after the incident, the Associate Principal of Kishwaukee, Matthew Pierce, called the Sheriff's Office to report what happened. The Sheriff's Office opened an investigation and assigned the case to Duehning. In the course of the investigation, an officer obtained school video surveillance and a cell phone video, which Duehning viewed.

The videos confirm much but not all of Schimandle's story because they do not depict the entire encounter and do not have audio. They show Schimandle approaching C.G. through the Commons area. C.G. was seated in a classroom next to a partially-open room divider which separated the classroom from the Commons area. Schimandle and C.G. talked. During the conversation, C.G. stood up to leave, but Schimandle reached for him to stop him. In doing so, Schimandle pushed C.G. into the room divider, which gave

way. When Schimandle finally grabbed C.G., he placed him in a bear hug. Schimandle then walked with C.G. in front of him in that position and at times seemed to drag C.G. across the Commons area and through a double set of doors. They passed into a foyer and Schimandle and C.G. fell to the ground. The videos end with Schimandle lying on top of C.G. and holding C.G. under control while on the ground.

Duehning interviewed Schimandle and other Kishwaukee employees involved in the incident, including Peek and Pierce. Schimandle also gave Duehning a written timeline of the incident. Duehning interviewed three additional Kishwaukee employees who witnessed the incident. The record does not state whether C.G. was interviewed.

In a report Duehning later prepared about the events, he described these interviews. He wrote that "Schimandle's account was similar to his written statement of events" and noted it is "consistent to what the surveillance video depicts." He made this same notation about Peek's, Pierce's, and three other employees' statements.

### C. Schimandle's Arrest, Trial, and Finding of Not Guilty

On November 26, 2019, Duehning submitted four affidavits in support of an arrest warrant for Schimandle. Those affidavits supported charges of criminal battery. Specifically, they alleged that Schimandle caused bodily harm to C.G. and made physical contact of an insulting and provoking nature to C.G. while (1) carrying C.G. and falling on top of C.G. with his body weight, and (2) carrying C.G. and using C.G.'s body to open a door, striking C.G.'s head and side into the door.

They do not mention exculpatory facts, such as evidence of an affirmative defense for Schimandle's actions.[1]

Relying on Duehning's affidavits, a Dekalb County magistrate judge found the battery charges were supported by probable cause and issued an arrest warrant for Schimandle. Schimandle turned himself in to the Sheriff's Office, where he was handcuffed and detained. Shortly after, the school district placed Schimandle on administrative leave, and eventually his employment with Kishwaukee was terminated.

Schimandle's criminal case proceeded to a bench trial. After the prosecution rested, Schimandle moved for a directed finding. The trial court granted Schimandle's motion, and he was found not guilty.

### D. Schimandle's Lawsuit and District Court Dismissal

As relevant to this appeal, Schimandle brought a claim under 42 U.S.C. § 1983 for false arrest in violation of his Fourth and Fourteenth Amendment rights as well as an Illinois state law claim for malicious prosecution. He sought to hold liable Duehning and the Sheriff's Office, the latter under the doctrines of respondeat superior and indemnification. The defendants moved to dismiss the complaint, arguing that Schimandle failed to state a cause of action for false arrest against Duehning and that Duehning was entitled to qualified immunity. The district court denied the motion. The

---

[1] On appeal, Schimandle argues Duehning should have known during his investigation that Schimandle had an affirmative defense under 105 ILL. COMP. STAT. 5/24-24. That statute allows teachers to use reasonable force against students in self-defense. Nothing in the record indicates that Duehning was aware of this statute or that Schimandle made him aware of it.

defendants answered Schimandle's First Amended Complaint and moved for judgment on the pleadings under Rule 12(c), again raising the same two defenses.

The district court granted the motion for judgment on the pleadings and entered judgment for the defendants. The court found that probable cause existed to arrest Schimandle and that Duehning was entitled to qualified immunity for his actions. For probable cause, the court found, "[t]he allegations taken in the light most favorable to Schimandle as well as the video recordings, overwhelming[ly] establish the existence of probable cause." In reaching this conclusion, the court emphasized that Schimandle admitted to putting C.G. in a bear hug, which satisfies the physical contact element of battery under Illinois law. The court also disagreed with Schimandle's argument that Duehning knew or should have known that Schimandle had authority to restrain C.G., so Duehning must have lied about his knowledge or omitted a potential affirmative defense from the affidavits for an arrest warrant. Rather than credit that contention, the court found that Duehning's affidavits did not contain false statements or material omissions. On qualified immunity, the court concluded that "[e]ven assuming probable cause did not exist," "*arguable* probable cause existed" supporting Schimandle's arrest. This appeal followed.[2]

## II

We review de novo the district court's grant of a Rule 12(c) motion for judgment on the pleadings. *Lisby*, 74 F.4th at 472. A motion for judgment on the pleadings is subject to the same

---

[2] The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and this court has jurisdiction under 28 U.S.C. § 1291.

standard as a motion to dismiss under Rule 12(b)(6). *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). A complaint must contain sufficient factual allegations to demonstrate a plausible entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018).

On appeal, Schimandle claims the district court erred by ruling first, that probable cause existed to arrest him for battery, and second, that Duehning was entitled to qualified immunity. Whether there was "probable cause to arrest [Schimandle] is separate from the question relating to qualified immunity." *Fleming v. Livingston County*, 674 F.3d 874, 879 (7th Cir. 2012); *see Jump v. Village of Shorewood*, 42 F.4th 782, 791–92 (7th Cir. 2022). We place to the side the first question and address the second, although the qualified immunity analysis requires us to consider the issue of arguable probable cause. Both issues can be extensive, and the latter is dispositive here.

**A**

Qualified immunity requires the court to determine: (1) whether the record evidences the violation of a federal statutory or constitutional right; and if so (2) whether the right violated was clearly established at the time the violation occurred. *See District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pierner-Lytge v. Hobbs*, 60 F.4th 1039, 1044 (7th Cir. 2023); *Fosnight v. Jones*, 41 F.4th 916, 924 (7th Cir. 2022). "If *either* inquiry is answered in the negative," qualified immunity protects the defendant official. *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014); *see Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Smith v. Finkley*, 10 F.4th 725, 737

(7th Cir. 2021). Qualified immunity provides "'ample room for mistaken judgments' and protects all but the 'plainly incompetent and those who knowingly violate the law.'" *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

Schimandle bears the burden of demonstrating that the right was clearly established at the time the alleged violation occurred. *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017). To be clearly established, the right must be "sufficiently clear that every reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)); *see also Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam). The Supreme Court has frequently cautioned at this step not to define that law at too high a level of generality. *See Mullenix*, 577 U.S. at 12 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)); *see also City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam); *Kisela*, 584 U.S. at 104.

Although the plaintiff need not point to an identical case finding the alleged conduct unlawful, he must point to precedent placing the "statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (quoting *Ashcroft*, 563 U.S. at 741); *see also Lopez v. Sheriff of Cook County*, 993 F.3d 981, 988 (7th Cir. 2021) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Otherwise, the plaintiff must persuade the court that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully. *See Wheeler*, 539 F.3d at 639.

"There is no question that [Schimandle's] constitutional right to be free from arrest without probable cause was clearly established at the time of the incident." *See Fleming*, 674 F.3d

at 879 (collecting cases reiterating the constitutional right to be free from arrest without probable cause).

But an officer is still entitled to qualified immunity in a false arrest case when "'a reasonable officer could have mistakenly believed that probable cause existed.'" *Id.* at 880 (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)). This inquiry is sometimes referred to as "arguable probable cause." *Id.* Although closely related, for qualified immunity purposes, a determination of *actual* probable cause is separate and distinct from *arguable* probable cause. *Id.* at 880.

Arguable probable cause is established when "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Id.* (cleaned up). Whether arguable probable cause "supports qualified immunity 'is a pure question of law' to be decided by the court." *Cibulka v. City of Madison*, 992 F.3d 633, 639 n.2 (7th Cir. 2021) (citing *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012)) (finding in false-arrest case that officers had arguable probable cause to arrest appellant for disorderly conduct where he admitted to actively resisting officers). And to decide it, we look to the totality of the circumstances. *See id.* at 638; *see also Illinois v. Gates*, 462 U.S. 213, 232–33 (1983); *Garcia v. Posewitz*, 79 F.4th 874, 880 (7th Cir. 2023) (per curiam).

Turning to this case, the underlying charge for which Schimandle claims he was falsely arrested is battery in violation of 720 ILL. COMP. STAT. 5/12-3(a). Count I of the indictment charged Schimandle under the first prong of that statute, which provides: "A person commits battery if he or she

knowingly without legal justification by any means, (1) causes bodily harm to an individual … ." 720 ILL. COMP. STAT. 5/12-3(a)(1).[3] Counts II and III of the indictment charged him under the second prong. That prong criminalizes "physical contact of an insulting or provoking nature." 720 ILL. COMP. STAT. 5/12-3(a)(2).

Each element of battery is supported here. First, Schimandle had physical contact with C.G. The video and Schimandle's admissions depict him grabbing C.G. and placing C.G. in a bear hug. Second, that physical contact could have caused bodily harm to C.G. Schimandle pushed C.G. into the room divider, placed C.G. in a bear hug, and walked with C.G. in front of him through the Commons area and a double set of doors. And Schimandle, a much bigger man, fell on top of C.G., a child, after moving through the doors. Third, Schimandle's contact with C.G. was of an insulting and provoking nature. He carries and drags C.G. as C.G. struggles to get away. Plus, after the fall, Schimandle lays on top of C.G. to pin him down. Last, Schimandle intended to make this contact with C.G. Schimandle admitted he sought out C.G. and placed him in a "bear hug."

Given the videos capturing the physical altercation, the multiple eyewitness interviews, and Schimandle's own admissions, a reasonable officer considering the same circumstances could have reasonably believed probable cause

---

[3] Per Illinois Jury Instruction 11.05, the phrase "without legal justification" is used "whenever an instruction is to be given on an affirmative defense contained in Article 7 of Chapter 38." Because Schimandle had an affirmative defense, but the case proceeded as a bench, not a jury, trial, we note this caveat but leave the phrase in the text above.

existed for each of those charges. *See Mwangangi v. Nielsen*, 48 F.4th 816, 825 (7th Cir. 2022).

The conclusion that there was at least arguable probable cause to arrest is supported by precedent. In many respects, the analysis here is similar to a recent decision from this court. In *Gaddis v. DeMattei*, the plaintiff complained of false arrest. This court held that the officer there had a reasonable belief that probable cause existed to arrest the plaintiff for an Illinois disorderly conduct violation. 30 F.4th 625, 631 (7th Cir. 2022). The officer interviewed bystanders, who discussed the disturbance plaintiff caused and plaintiff's pattern of disruptive behavior. Based on those interviews, the officer made his own assessment. After the investigation, the officer concluded that the plaintiff posed a risk to others and arrested him. *Id.* In the court's analysis, it noted that the facts were "gleaned firsthand" by the officer and cited our precedent on arguable probable cause. *Id.*

Here, like the officer in *Gaddis*, Duehning had firsthand information from interviews about a disturbance. He even had corroborating video showing the altercation. Both the interviews and videos confirmed that Schimandle grabbed C.G., placed him in a bear hug, and pushed him through a double set of doors, supporting an inference Schimandle caused bodily harm to C.G. and showing that he had physical contact with C.G.

Unlike in *Gaddis*, Duehning did not believe Schimandle's conduct was ongoing or a problem beyond this isolated incident. Also unlike that case, Schimandle told Duehning that he placed C.G. in a bear hug. Thus, Schimandle admitted to some of the elements of Illinois battery, while the plaintiff in *Gaddis* did not admit to the elements of a crime. The information

provided to and collected by Duehning in his investigation made it reasonable for him to believe probable cause existed to arrest Schimandle for battery.

Moreover, the magistrate judge's approval of the arrest warrant bolsters the officer's reasonable belief that probable cause supported the warrant and the application of qualified immunity. *Cf. Fleming*, 674 F.3d at 881 (explaining the fact that the officer had consulted with the District Attorney prior to arresting the plaintiff-arrestee "goes a long way toward solidifying his qualified immunity defense"); *see also Johnson v. Myers*, 53 F.4th 1063, 1070 n.2 (7th Cir. 2022) (same); *Burritt v. Ditlefsen*, 807 F.3d 239, 251 (7th Cir. 2015) (same). The Supreme Court has noted that "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or … in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *United States v. Leon*, 468 U.S. 897, 922–23 (1984)); *see also Socha v. City of Joliet*, 107 F.4th 700, 710 (7th Cir. 2024). We heed that direction and give credence to the magistrate judge's determination here.

Last, Schimandle agrees that his Illinois state law claim for malicious prosecution stands or falls on the existence of arguable probable cause for his arrest. *See* Brief for Plaintiff-Appellant at 23, *Schimandle v. Dekalb Cnty. Sheriff's Off.*, No. 23-2151 (7th Cir. Aug. 14, 2023), ECF No. 9. Other than this concession, the parties do not discuss this claim. Given this lack of development, and our conclusion that arguable probable cause existed here, we do not disagree with this concession.

**B**

Schimandle lodges two additional arguments. He contends that even if there was at least arguable probable cause, Duehning is not entitled to qualified immunity because he falsified information and intentionally omitted material, exculpatory evidence from the warrant affidavits.

Falsifying the factual basis for a warrant violates the Fourth Amendment. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978) (holding a search or seizure pursuant to a warrant is unreasonable if the affidavit supporting the warrants contains deliberate "falsity or reckless disregard" for the truth); *see also Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019); *Hart v. Mannina*, 798 F.3d 578, 591 (7th Cir. 2015). This rule applies equally to material omissions. *See United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014); *see also Garcia*, 79 F.4th at 879 ("[A]n official violates the Fourth Amendment by intentionally or recklessly omitting from a warrant application information that is material to determining probable cause.").

Schimandle provides little information as to what those false statements or material omissions were.[4] Viewing his arguments in their best light, he seems to contend that the falsifications or omissions were: (1) that Duehning noted Schimandle's testimony was "consistent" with the video yet still signed affidavits for an arrest warrant; and (2) that Duehning knew about and omitted Schimandle's claimed affirmative defense under 105 ILL. COMP. STAT. 5/24-24 (a statute permitting teachers and other qualified individuals in schools

---

[4] At oral argument, we inquired as to the nature of the omissions, but Schimandle's counsel did not offer an explanation. *See* Oral Arg. at 6:10–7:28.

to use "reasonable force" to maintain safety in some situations). Neither argument has merit.

First, Schimandle states that Duehning reported, "Schimandle's account was similar to his written statement of events and is consistent to what the surveillance video depicts." This argument has two parts. The court should conclude that Duehning believed Schimandle's description of the incident matched what the surveillance videos showed. So, Duehning must have falsified information on the affidavits by determining Schimandle committed battery because the video did not depict a battery.

The problem is that the videos only show clips of the altercation between Schimandle and C.G. Duehning had no evidence of what happened before the altercation began. The videos started too late, and the witnesses did not see anything until Schimandle already had C.G. in a bear hug. Additionally, there is no audio recording of the conversation between Schimandle and C.G., so there is no way to tell what Schimandle and C.G. are saying, if anything. Duehning had to make his own conclusions and could not have fully adopted Schimandle's version of events because he had no evidence beyond Schimandle's account of the conversation occurring during the altercation. Duehning would have also gleaned additional facts from the videos that are not reported in Schimandle's version of events. These additional facts are consistent with Schimandle's version of events but provide further support for the elements of battery. One example is the portion of the video showing Schimandle pushing C.G. through the room divider in Schimandle's attempt to grab C.G. and stop him from fleeing. Schimandle did not discuss this part of the altercation, but Duehning would have seen it

in the video and been able to draw his own conclusion based on such information. Therefore, this argument does not support the contention that Duehning falsified information because the video and Duehning's attestations did not contradict the affidavits for an arrest warrant.

Second, Schimandle argues that Duehning knew or should have known about Schimandle's claimed affirmative defense under 105 ILL. COMP. STAT. 5/24-24 and that Duehning purposely omitted it from the affidavits supporting Schimandle's arrest warrant.

We are far from certain that statute provides an affirmative defense in this type of action. Even assuming that it could apply, once a law enforcement officer discovers sufficient facts to establish probable cause, he has no constitutional obligation to conduct any further investigation in the hope of discovering exculpatory evidence or possible defenses. *See Eversole v. Steele*, 59 F.3d 710, 718 (7th Cir. 1995); *see also Madero v. McGuinness*, 97 F.4th 516, 522–23 (7th Cir. 2024). An officer "'may not ignore conclusively established evidence of the existence of an affirmative defense,'" but the Fourth Amendment imposes no duty to investigate whether a valid defense exists. *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) (quoting *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004)); *see also Madero*, 97 F.4th at 523; *Doe v. Gray*, 75 F.4th 710, 719 (7th Cir. 2023).

Moreover, the existence and validity of an affirmative defense does not necessarily negate probable cause to arrest. *See Humphrey*, 148 F.3d at 724 (validity of affirmative defense is irrelevant to whether police officer sued for false arrest had probable cause to make arrest). The "[p]olice are entitled to leave to the criminal process the full examination of potential

defenses[,]" *Phillips v. Allen*, 668 F.3d 912, 914 (7th Cir. 2012), and "[a] person's ability to explain away seemingly damning facts does not negate the existence of probable cause, even though it might provide a good defense should the case go to trial." *Deng v. Sears, Roebuck & Co.*, 552 F.3d 574, 577 (7th Cir. 2009).

Plus, there is no evidence that Duehning knew teachers could use force against students in certain situations. Schimandle does not allege that he told Duehning about his authority to restrain C.G. or that anyone else told Duehning. He just asserts that Duehning "knew or should have known" about the defense. After viewing the videos, questioning Schimandle and other witnesses, and reasonably determining probable cause existed to arrest Schimandle for battery, Duehning did not need to investigate possible defenses and their potential application. *See Madero*, 97 F.4th at 523.

Even if Duehning should have investigated possible affirmative defenses and included that information in the affidavits, it would not have changed the probable cause determination. Again, only omitting *material* facts violates the Fourth Amendment. *See Garcia*, 79 F.4th at 879; *Glover*, 755 F.3d at 820. "[A]n omitted fact is material if its inclusion would have negated probable cause." *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010). We weigh materiality by asking "whether a hypothetical affidavit that included the omitted material would still establish probable cause." *Hart*, 798 F.3d at 593.

Information about the claimed affirmative defense was ultimately immaterial. Duehning would have had to consider whether Schimandle's use of force was reasonable, one way or the other.

An objectively reasonable officer could still find probable cause in the face of Schimandle's affirmative defense. Schimandle admitted to placing C.G. in a bear hug, and the video shows Schimandle moving with C.G. through a doorway, then Schimandle later falling on top of C.G. That could be enough to show willful and wanton conduct that may not fall under the affirmative defense Schimandle raised. So even assuming omission, that omission does not negate probable cause and is immaterial. *See, e.g., id.* at 592–93 (omission of exculpatory information from affidavit was immaterial because the omitted information did not change the probable cause determination). Duehning was not required to include Schimandle's affirmative defense in the affidavits for an arrest warrant.

\*      \*      \*

"Rarely do we see qualified immunity awarded at the pleading stage." *Roldan v. Stroud*, 52 F.4th 335, 337 (7th Cir. 2022); *see Reed*, 906 F.3d at 548. That is because whether qualified immunity applies "most often depend on facts a plaintiff is not required to plead at the outset of litigation to avoid dismissal." *Roldan*, 52 F.4th at 337. But here, the district court appropriately analyzed videos of the incident, witness testimony, and reports incorporated in Schimandle's pleadings. That substantial evidence allowed the district court—and us now—to consider and recognize qualified immunity at this stage.

**III**

We conclude by noting that despite this prosecution ending with Schimandle's vindication—he is not guilty of the charged offense—Schimandle lost his job and endured

prosecution and scrutiny. Notwithstanding the difficulties Schimandle faced, the law of qualified immunity compels an affirmance here. Because arguable probable cause supported Schimandle's arrest, entitling Duehning to qualified immunity and barring Schimandle's malicious prosecution claim, we AFFIRM the district court's dismissal of Schimandle's complaint.