In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1304

ELIAS VILLALOBOS,

*Plaintiff-Appellee,*

*v.*

LOUIS PICICCO, *et al.,*

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-08510 — **Franklin U. Valderrama**, *Judge.*

ARGUED DECEMBER 10, 2025 — DECIDED MARCH 6, 2026

Before BRENNAN, *Chief Judge*, and LEE and KOLAR, *Circuit Judges*.

BRENNAN, *Chief Judge*. This constitutional tort case comes to us in a peculiar procedural posture. In 2015, Calumet City, Illinois police officers tased and shot Elias Villalobos in his home. Villalobos sued the officers under 42 U.S.C. § 1983, alleging violations of the Fourth Amendment. At the summary judgment stage, the officers invoked qualified immunity. But the district court largely rejected that affirmative defense,

finding that nearly all Villalobos's excessive force theories of liability should go to trial. In the district court's view, a jury must resolve fact disputes central to the officers' qualified immunity defense.

The district court also decided one issue as a matter of law. It concluded that the officers violated the Fourth Amendment when they entered Villalobos's home without a warrant. Unconvinced by the officers' argument that they faced exigent circumstances, the court rejected their qualified immunity defense and granted partial summary judgment to Villalobos. The officers then brought this interlocutory appeal, challenging only the district court's analysis of that issue.

For the reasons stated below, we vacate the district court's order on the unlawful entry issue and remand for further proceedings. On remand, the parties should advance arguments on both prongs of the qualified immunity test, not just one. We also respectfully invite the district court to consider the implications of some factual disputes identified by the parties on appeal.

## I

### A. Undisputed Facts

In May 2015, Officer Louis Picicco drove to the home of Elias Villalobos in Calumet City. He was responding to a 911 call about a man throwing a knife in an alley near the house. When Picicco arrived, he spoke to the 911 caller, who pointed out the alleged knife-thrower. Picicco says he watched the man enter the house through the front door, but he did not see anything in the man's hands.

After Officer Kyle Brasewicz arrived, the two officers knocked on Villalobos's front door. They then exchanged

words with at least one person, who told the officers from behind the closed door to go away.

At least two things happened next. First, Officer Fernando Guerrero and Sergeant Kevin Urbanek arrived sometime following the exchange at the door. Second, some of the officers interacted with two other people outside the house who did not appear injured or in distress.

The officers also learned (at some point during the encounter) about a domestic violence incident linked to Villalobos's address. A few days earlier, a woman had reported Villalobos to the Calumet City Police Department, accusing him of "choking her in the shower, putting a gun to her head and threatening to kill her, and accusing her of stealing drugs from him."

Based on the information the officers had gathered, they decided to enter Villalobos's home through the unlocked back door without a warrant. In their telling, they did so to conduct a well-being check and to ensure the safety of occupants. Villalobos contends this was a "pretext" designed to "grab" him illegally in his own home.

Once inside the house, the officers searched for the man Picicco saw earlier. In the kitchen, they encountered a woman who did not appear injured. On the second floor, they found Villalobos hiding in a crawl space in the bedroom closet.

Both sides strongly dispute what happened next. The officers contend Villalobos refused to comply with their commands and threatened them with an electric drill, a stick, and a knife. Villalobos insists he did none of these things. But all agree the officers tased Villalobos several times before Picicco shot him.

### B. Procedural History

Villalobos sued Picicco, Brasewicz, Guerrero, and Urbanek for their roles in this incident. Villalobos's pro se amended complaint did not explain the legal theory of his lawsuit. Once he obtained counsel, the parties distilled two claims from his account.[1] A series of Fourth Amendment excessive force theories of liability became the centerpiece of the lawsuit. By tasing him several times, Villalobos argued, each officer had acted unreasonably because he had not resisted their commands or threatened them. He also asserted that Picicco had no reasonable grounds for shooting him because he did not wield a knife at the officers.

Villalobos also alleged the officers violated his Fourth Amendment right to be free of a "warrantless and nonconsensual entry" into his home. *Payton v. New York*, 445 U.S. 573, 576 (1980). The officers, however, believed the exigent circumstances exception to the warrant requirement justified their entry. There had been a prior domestic violence incident at the house, and some officers claimed they heard a woman's voice from behind the door say she could not open it. So, under the totality of circumstances, the officers decided to conduct a well-being check for the physical safety of individuals who might be inside.

At the close of discovery, the officers moved for summary judgment. They invoked qualified immunity as an affirmative defense to all Villalobos's Fourth Amendment challenges. But the district court largely denied this motion. Though it decided Picicco could not be held liable for the first deployment

---

[1] Villalobos voluntarily dismissed his third theory, a false arrest argument, at the summary judgment stage.

of his taser, the court rejected the officers' motion on all other excessive force arguments. It found several disputes of material fact on issues core to the immunity defense, precluding summary judgment. These are issues for trial on remand.

The district court handled the unlawful entry theory differently. Villalobos had moved for partial summary judgment on this issue, contending the officers had not shown an emergency justifying their warrantless entry. Agreeing with Villalobos, the district court simultaneously rejected the officers' qualified immunity defense and entered partial summary judgment for Villalobos on the unlawful entry component.

The officers then filed this interlocutory appeal. They challenge only the portion of the district court's order denying them qualified immunity on Villalobos's unlawful entry claim. The officers do not ask us to revisit the grant of partial summary judgment to Villalobos, nor do they appeal the district court's handling of the excessive force claims.

We review a denial of summary judgment de novo. *Smith v. Finkley*, 10 F.4th 725, 734 (7th Cir. 2021). In other words, we examine the record to see whether the district court properly rejected the defendants' qualified immunity defense. *Id.* When the facts require us to draw inferences, they are construed in favor of the non-moving party, Villalobos. *Doe v. Gray*, 75 F.4th 710, 716 (7th Cir. 2023).

## II

As always, we begin with jurisdiction. *Chi. Tchrs. Union, Loc. 1 v. Educators for Excellence, Inc.*, 159 F.4th 524, 528 (7th Cir. 2025). We have no reason to doubt the district court's jurisdiction to hear the underlying dispute. *See* 28 U.S.C. § 1331.

But this court must also ensure it has appellate jurisdiction. *Smith*, 10 F.4th at 734–35.

Appellate courts have jurisdiction to review final orders. 28 U.S.C. § 1291. Normally, this means parties cannot appeal a denial or partial grant of summary judgment when other claims continue to trial. *Dupree v. Younger*, 598 U.S. 729, 735–36 (2023); *Stinson v. Gauger*, 868 F.3d 516, 522 (7th Cir. 2017) (en banc). Under the collateral order doctrine, though, orders rejecting a qualified immunity defense before trial are treated as final. *Mitchell v. Forsyth*, 472 U.S. 511, 524–30 (1985). Because qualified immunity is an "immunity from suit rather than a mere defense to liability," the Supreme Court has clarified that the defense is "effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526 (emphasis omitted). So appellate courts can sometimes review a district court's denial of summary judgment on qualified immunity grounds.

In this interlocutory posture, "appellate jurisdiction is limited." *Smith*, 10 F.4th at 729. An appellate court has jurisdiction over purely legal questions but not a district court's "determination of 'evidence sufficiency.'" *Plumhoff v. Rickard*, 572 U.S. 765, 772 (2014) (quoting *Johnson v. Jones*, 515 U.S. 304, 314 (1995)). That means it cannot review a district court's conclusion that genuine disputes of material fact preclude summary judgment. *Stewardson v. Biggs*, 43 F.4th 732, 734 (7th Cir. 2022). But if the defendants "adopt the plaintiff's facts" on appeal, we can review the legal question of whether those facts satisfy the qualified immunity test. *Smith*, 10 F.4th at 738.

The "line between appealable and nonappealable orders" is often "hazy." *Gutierrez v. Kermon*, 722 F.3d 1003, 1011 (7th Cir. 2013). So this court has articulated a two-step test for determining our appellate jurisdiction in unclear cases. First, we

examine whether the district court "identifies factual disputes as the reason for denying qualified immunity." *Smith*, 10 F.4th at 736. And second, we "consider the arguments (or stipulations) offered by those appealing to see if they … make a 'back-door effort' to use disputed facts." *Id.*

The first step is not dispositive: even if the district court points to factual disputes when rejecting qualified immunity, appellate jurisdiction exists if the defendant officials adopt the plaintiff's version of the facts for purposes of the legal inquiry. *See Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011). But if an official fails the second step, he "effectively pleads himself out of court by interposing disputed factual issues in his argument." *Gutierrez*, 722 F.3d at 1010. The goal of this inquiry is to see whether the "arguments for qualified immunity depend upon, and are inseparable from," disputed facts. *Smith*, 10 F.4th at 738.

Of course, this court always has jurisdiction to determine its own jurisdiction. *Word Seed Church v. Village of Hazel Crest*, 111 F.4th 814, 819 (7th Cir. 2024). We exercise that authority now to consider the propriety of this appeal.

## III

At first glance, this looks like the type of case in which this court has appellate jurisdiction. The district court rejected the officers' qualified immunity defense as a matter of law on the unlawful entry issue. It identified no disputes of material fact requiring the issue to go to trial—unlike the excessive force claims, which all hinged on disputed facts. The court also identified no relevant factual disputes on the same issue and granted partial summary judgment to Villalobos. Further, the

officers generally adopt both Villalobos's account and the district court's recitation of the relevant facts before this court.

In an ordinary case, this would be more than enough to rule on qualified immunity. But in their briefs and at oral argument, both parties alerted us to anomalies in the underlying litigation, giving us pause. The officers noted that the district court did not consider one prong of the qualified immunity analysis—whether "clearly established law" put the officers on notice that their conduct violated the Fourth Amendment. And Villalobos maintains there are disputes of material fact on the unlawful entry claim, precluding appellate jurisdiction. Given the confusion about both points throughout this appeal, we address each in turn.

### A.  Clearly Established Law

There are two prongs to the qualified immunity analysis. *Doe*, 75 F.4th at 716. First, courts ask whether officials violated a federal right. *Id.* Second, they consider whether "the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation modified). Unless both questions are answered in the affirmative, the defendant is protected by qualified immunity. *See Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019).

Importantly, the plaintiff bears the burden of proving the law is clearly established—not the defendant. *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013). Though "qualified immunity is an affirmative defense," the "burden shifts to the plaintiff to defeat it" once properly raised. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019). Meeting this burden is a "do or die" requirement for the plaintiff's suit. If a plaintiff fails to identify analogous precedent clearly establishing the

law, the district court must grant summary judgment for the defendant. *Manery v. Lee*, 124 F.4th 1073, 1079 (7th Cir. 2025) ("An official will be protected by qualified immunity unless the plaintiff" satisfies both prongs (citation modified)).

A plaintiff carries this burden by pointing to specific cases, not general legal principles. *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). The plaintiff must identify "a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand." *Leiser*, 933 F.3d at 701 (citation omitted). "Although the plaintiff need not point to an identical case finding the alleged conduct unlawful," the bar is still high: plaintiffs "must point to precedent placing the 'statutory or constitutional question beyond debate.'" *Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 655 (7th Cir. 2024) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). As the Supreme Court regularly reminds us, "[i]t is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Tahlequah*, 595 U.S. at 12 (citations modified). That means courts must not "define clearly established law at too high a level of generality." *Id.*[2]

---

[2] If no such analogous case exists, the plaintiff can try to satisfy this burden by showing the violation was so obvious that no reasonable officer could believe his actions were constitutional. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) ("Of course, in an obvious case, [general] standards can 'clearly establish' the answer, even without a body of relevant case law."). But it is a "rare case[] in which the constitutional violation is patently obvious and so outrageous" that an officer loses the qualified immunity defense in this way. *Smith*, 10 F.4th at 746 n.8 (citation modified). The Supreme Court usually reserves this escape hatch for egregious factual

In this case, neither party asked, nor did the district court decide, whether the relevant law was clearly established. But district courts cannot deny qualified immunity as a matter of law unless both prongs of the test are satisfied. *See Stewardson v. Titus*, 126 F.4th 1264, 1276 (7th Cir. 2025) ("Before piercing an officer's immunity shield, a court must answer both steps of the inquiry in the affirmative."). By contrast, a district court can grant a motion for summary judgment on qualified immunity grounds by relying on either prong of the test. *Pearson v. Callahan*, 555 U.S. 223, 231–37 (2009). This asymmetry arises because qualified immunity "provides ample room for mistaken judgments and protects all but the plainly incompetent and those who knowingly violate the law." *Schimandle*, 114 F.4th at 655 (citation modified).

The summary judgment standard adds a layer of complexity. But the same principles govern when the material facts are undisputed: the court can either grant or deny the motion as a matter of law. *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 386 (2007).

Where material facts are disputed, the district court has three options. First, it can still grant the motion for summary judgment on qualified immunity grounds, so long as it construes all facts in the plaintiff's favor. *Wonsey v. City of Chicago*, 940 F.3d 394, 400 (7th Cir. 2019). If it finds that the plaintiff's factual allegations do not add up to a constitutional violation, it should enter judgment on prong one. *Id.* at 401. Or it can find that the relevant law was not clearly established at the time of the incident, granting the motion on prong two. *See, e.g., Pryor v. Corrigan*, 124 F.4th 475, 491 (7th Cir. 2024).

---

scenarios in the Eighth Amendment context. *See Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Second, the district court can deny the motion for summary judgment and reject the qualified immunity defense as a matter of law. These cases arise when both prongs of the qualified immunity analysis are satisfied, taking the plaintiffs' version of the facts as given. *See generally Est. of Escobedo v. Bender*, 600 F.3d 770 (7th Cir. 2010). In some cases, but not all, this means the plaintiff could also be entitled to summary judgment on the relevant legal theory. Of course, the district court would need to re-construe all facts in the defendant's favor before granting such a motion. *Pryor*, 124 F.4th at 483.

Third, the district court can deny the summary judgment motion when there are disputed facts going to the heart of the immunity defense. *Smith*, 10 F.4th at 750. In this scenario, the district court temporarily rejects the qualified immunity defense, but the defendants can renew it after a jury settles the relevant disputes of fact at trial. *Id.* ("[T]he affirmative defense remains preserved for a later ruling"). This category represents the standard case in which there is no appellate jurisdiction. *See Johnson*, 515 U.S. at 316–18.

Before the district court, Villalobos did not point to any cases with analogous facts that clearly established the law.[3]

---

[3] In his motion for partial summary judgment, Villalobos cited three cases that cannot satisfy his burden, for different reasons. First, he cited *Caniglia v. Strom*, 593 U.S. 194 (2021), a case concluding there is no "free-standing community-caretaking exception" to the warrant requirement. *Id.* at 197. But that case postdates this incident, which occurred in 2015. *See Brosseau*, 543 U.S. at 198 ("[R]easonableness is judged against the backdrop of the law at the time of the conduct."). Next, he cited *United States v. Pichany*, 687 F.2d 204 (7th Cir. 1982), on the same point. But that case is not analogous to these facts. *Id.* at 205–06 (officers entered a commercial warehouse without a warrant in response to a burglary). Finally, he cited *United States v. Patino*, 830 F.2d 1413 (7th Cir. 1987), for the point that officers do

Instead, he principally argued that a case the officers cited in support of their qualified immunity defense—*United States v. Huddleston*, 593 F.3d 596 (7th Cir. 2010)—was not analogous to his situation. In *Huddleston*, police officers received a call that a man "had a gun and was trespassing in the home of a woman whom he had threatened to kill earlier that evening." *Id.* at 600. Even though the officers did not see any evidence of imminent domestic abuse, this court held that exigent circumstances justified their warrantless entry into the home. It did so, in part, because the officers knew Huddleston had "a criminal history involving the discharge of a firearm." *Id.*

It is certainly possible to distinguish *Huddleston* from this case, but that is not the point of the qualified immunity test. Villalobos's burden is more specific. He should point to an analogous case holding that officials violated the Fourth Amendment, not one where they acted constitutionally. If anything, *Huddleston* muddies the waters: it suggests a reasonable officer could think a warrantless entry is acceptable, even when the officer does not see first-hand evidence of domestic abuse. *Cf. Stewardson*, 126 F.4th at 1277 ("[T]he law as it existed" at the time of the incident "would have led a reasonable officer to conclude" his actions were "appropriate."). When a case holds that officials acted *reasonably*, that precedent would not prompt an officer to think his own analogous conduct is *unreasonable*. These cases, therefore, "clearly establish" the law only in the rarest of circumstances.

---

not face exigent circumstances when they have time to get a warrant. *Id.* at 1415–16. Again, this case does not clearly establish the law because of obvious factual dissimilarities. *See id.* at 1414 (officers went out to lunch for nearly two hours between receiving verbal authorization to arrest and entering the home).

At oral argument, the officers argued that Villalobos did not carry his burden on this point. That would mean the district court could not have properly denied the officer's motion for summary judgment. On remand, the district court should invite Villalobos to identify specific cases showing the law was clearly established.[4]

## B. Factual Issues

Normally, this court does not send "pure questions of law" back to the district court. *Smith*, 10 F.4th at 735. As discussed above, we can consider whether the district court correctly applied the qualified immunity test to undisputed or stipulated facts. *Id.* at 736. That includes whether the law is clearly established. *Stewardson*, 126 F.4th at 1275–79; *Doe*, 75 F.4th at 716–18. But in their briefs and at oral argument, the

---

[4] For the first time at oral argument, Villalobos pointed to a case that might satisfy the test. *Hawkins v. Mitchell*, 756 F.3d 983 (7th Cir. 2014); *see* Oral Arg. at 14:05–14:37. There, two police officers responded to a 911 call regarding a domestic dispute involving a person with a history of abuse. *Hawkins*, 756 F.3d at 987–88. Upon arrival at the residence, the officers saw the woman outside, spoke to her, and confirmed she had no injury. *Id.* at 988. Yet the officers entered the home anyway. *Id.* This court found no exigent circumstances in *Hawkins* because the officers knew "no physical attack had occurred" and the woman in question was outside the home while the man was inside. *Id.* at 993.

Villalobos did not cite this case in his briefs to us. And as far as we can tell, he also did not cite it for its specific factual predicate before the district court. *See* Dkt. 174 at 8 (quoting *Hawkins* for general principles, not its facts). Neither this court nor the district court, therefore, had an adequate opportunity to consider the applicability of *Hawkins* to this case. If Villalobos invokes *Hawkins* on remand, the district court should consider whether the discrepancies between this case and *Hawkins*—including the fact that these officers never saw the woman in question—change the way a reasonable officer would evaluate the situation.

parties alerted us to additional difficulties in this case, coun-
seling against deciding the legal question at this juncture.

Villalobos argues there are disputes of fact related to his
unlawful entry theory, which foreclose appellate jurisdiction.
This argument struck us as odd. After all, the district court
granted his motion for partial summary judgment on that
claim. The court could do so only if, re-construing all facts in
the officers' favor, it concluded there were no genuine dis-
putes of material fact. *Cf. Gill v. Scholz*, 962 F.3d 360, 363 (7th
Cir. 2020) (where "both parties filed cross-motions for sum-
mary judgment, all reasonable inferences are drawn in favor
of the party against whom the motion was granted"). The dis-
position of this case, therefore, suggested Villalobos's jurisdic-
tional arguments did not have merit.

After a de novo review of the record, however, we strug-
gled to identify all the undisputed facts necessary for our le-
gal ruling. Oral argument brought less clarity. The parties
conceded disputed facts and changed the factual narrative
presented in the district court's opinion. Though minor dis-
putes abound, two stand out: the exchange at Villalobos's
door and the timeline of the incident.

### 1. *The parties dispute who answered the door.*

The parties disagree on whether a woman or a man re-
sponded when Picicco and Brasewicz knocked on Villalobos's
door. The officers claim they heard only a female voice tell
them to "go away" and "that she could not open the door." In
his deposition, Picicco claimed the woman's response made
his "suspicion level … grow rapidly because the tone in her
voice was that of uncertainty or fear." He felt he had "reason

for concern" because he had watched a person who allegedly had a knife walk through that same door moments earlier.

But Villalobos says he also responded to the officers from behind the door. In his statement of facts, Villalobos told the district court that "he and his guest" told the officers to go away, implying the "guest" was a woman. In response to the officers' statement of facts, he admitted a woman responded. Yet Villalobos testified at his deposition, "I told [the officers]: Go away. No one called you. I didn't call you, no one here called you, so go away, there is nothing happening here."[5]

At oral argument, counsel for both parties conceded they dispute what happened at the door. And for the first time before us, both sides hypothesized that nobody opened it because the occupants were "having trouble getting the door open."[6] No record support was offered for that point.

For its part, the district court construed the facts in Villalobos's favor and concluded that both he and his guest responded at the door. It did not note this as a disputed fact.

---

[5] The officers denied Villalobos's statement of facts insofar as it suggested a man's voice answered at the door. Villalobos justifies his claim that multiple people responded at the door with a cursory reference from his deposition testimony: that "everybody said who is it" when the officers knocked. He made clear that the other people in the house "wanted to answer," but "I told them no because it's my house."

[6] *Compare* Oral Arg. at 3:47–4:57 (counsel for the officers acknowledges the disputed fact), *with id.* at 16:32–18:30 (counsel for Villalobos says he disagrees with the officers' characterization of the incident but believes their version does not amount to an exigency). Counsel for the officers expressed willingness to adopt Villalobos's version of the facts for purposes of this appeal.

## 2. *The timeline of the incident is unclear.*

Villalobos also makes factual claims about the timeline of this incident. In his brief, he contends, "Defendants, after knocking and being told to leave, waited for over thirty minutes before attempting entry for the second time." Though he did not make this exact assertion before the district court, Villalobos said (and the officers disputed) that they waited to enter the house until "[a]proximately fifteen minutes after Defendant Urbanek arrived."

Yet on the officers' telling, thirty minutes (plus or minus) elapsed from Picicco's first conversation with the 911 caller to the encounter in which Villalobos was tased and shot. In fact, Picicco estimated that fifteen minutes elapsed between when he saw the man who allegedly held a knife and when the officers entered the house. And in his deposition testimony, even Villalobos admitted the officers entered his home roughly "three, four minutes" after the exchange at the door—a much shorter delay than the "over thirty minutes" he submits on appeal.

As the district court noted, and Villalobos reminds us, one factor in the exigent circumstances test can be whether officers had enough time to get a warrant. *See Sutterfield v. City of Milwaukee*, 751 F.3d 542, 553, 557 (7th Cir. 2014). If we adopted Villalobos's version of events, we would be basing our qualified immunity analysis on a factual claim not grounded in the record. Yet, we do not normally consider such thorny fact questions for the first time on appeal. *Cf. Roberts v. Sears, Roebuck & Co.*, 723 F.2d 1324, 1335 (7th Cir. 1983) ("An appellate court does not sit to adjudicate *de novo* the factual issues" raised in a case).

*          *          *

Given the considerable confusion about these critical facts, we decline to address the legal question of whether the law was clearly established. To be sure, not every factual dispute is "material," even under a totality of the circumstances test. *See Tousis v. Billiot*, 84 F.4th 692, 695 (7th Cir. 2023) (though the parties disputed facts, none were "material to the relevant legal question" of qualified immunity). And the district court has latitude to respond to the parties' presentation of the facts as it sees fit. *See* FED R. CIV. P. 56(e). But our de novo review yields potentially dispositive fact disputes in this record.

When the district court reconsiders the officers' motion for summary judgment, it could receive additional submissions from the parties to clarify some of these facts. We do not believe these concerns destroy our appellate jurisdiction, given that the appellee (Villalobos), not the appellants (the officers), made a "back-door effort" to use disputed facts. *Cf. Smith*, 10 F.4th at 736. But Villalobos relied on these facts as a central component of his appeal, so it would be best if the district court reconsidered their significance in the first instance. Further specificity about when the officers learned relevant information will help clarify the reasonableness of their actions under the Fourth Amendment.[7]

## IV

Taken together, these difficulties encourage us to send this case back to the district court to reassess the unlawful entry issue. When exercising our jurisdiction to determine whether

---

[7] Beyond the disputed facts identified above, there may be other facts relevant to the totality of the circumstances to reconsider, including when exactly the officers learned about the prior domestic violence incident.

appellate jurisdiction exists, this court vacates and remands "as may be just under the circumstances." 28 U.S.C. § 2106; *cf. Pasquino v. Prather*, 13 F.3d 1049, 1050–53 (7th Cir. 1994) (vacating an order denying qualified immunity and remanding because of confusion about its factual and legal predicates, citing Circuit Rule 50). Given the legal and factual hurdles to properly resolving this appeal, the district court should facilitate another attempt at clarifying this issue before the rest of the case goes to trial.

Accordingly, we VACATE the district court's order in part—only insofar as it denied the defendants' motion for summary judgment on the unlawful entry issue. And we REMAND for further proceedings in line with this opinion. Villalobos should point to precedent putting the officers on notice that their specific conduct was unlawful in 2015. We also invite both the parties and the district court to clarify the facts in light of the disputes raised on appeal.

VACATED AND REMANDED WITH INSTRUCTIONS